871 So.2d 978 (2004)
Andre P. ASSAM, Appellant,
v.
FLORIDA UNEMPLOYMENT APPEALS, etc., et al., Appellee.
No. 3D03-347.
District Court of Appeal of Florida, Third District.
April 14, 2004.
*979 Andre P. Assam, in proper person.
John D. Maher, Tallahassee, for appellee Commission.
Before FLETCHER, RAMIREZ, and SHEPHERD, JJ.
PER CURIAM.
This is an appeal by Andre Assam from a final order of the Florida Unemployment Appeals Commission (hereafter "Commission") dismissing a notice of appeal filed by him on the ground of timeliness.
Andre Assam was employed as a telecommunications technician for Turnberry Country Club, a hotel and resort. As such, he worked throughout the hotel property, installing or repairing telephone equipment on an as needed or "on call" basis. Any period in his workday when he was not actively repairing and installing was referred to as "down time." He had no fixed times for breaks and lunch, but rather was allowed breaks or meals by his supervisor, depending on workflow and completion of assignments.
In October 2001, Assam was spoken to regarding his personal use of the employer's telephone during working hours. In February 2002, he was allegedly given a final warning after he had calls totaling 256 minutes to his fiancé over a period of approximately five weeks. On July 30, 2002, Assam punched in at work and could not be found. The battery on Assam's pager had run out. Assam was discharged the next day, allegedly for logging 721 minutes of phone use to his fiancé during the prior five and one-half months. Assam urges that much of this usage, which averaged 66 minutes per month, occurred either on break time or because he was on-call 24-7 for one of those months while his supervisor was on vacation. None of the calls were made at the employer's expense since he had a 1-800 number for calls to his fiancé. Assam suggests that the true reason for his dismissal was the result of low seasonal vacationing at the resort.
Assam's claim for unemployment benefits was initially granted, but that determination[1] was reversed by an appeals referee, who found that it was Assam's misconduct that led to his discharge and disqualified him from receiving benefits. The appeals referee decision denying Assam benefits was mailed to Assam on November 26, 2002.
A few days later, on December 5, 2002, Assam was mailed a second determination stating that the State had overpaid him almost $4,000, and ordering him to return the monies to the Unemployment Compensation Fund. Each decision contained standard form language, advising Assam that he had twenty (20) days from the mailing date of the respective decisions to file an appeal of the decision. Fla. Stat. § 443.151(3) and (4)(2002). Rules promulgated by the Commission allow for appeals from both "determinations" and appeals referee decisions to be filed with the office of the Unemployment Appeals Commission. See Fla. Admin. Code R. 60BB-5.004(3) *980 and R.60BB-5.004(3) (2002) respectively.
On December 23, 2002, Assam filed an appeal to the Commission. The notice of appeal was late as to the appeals referee decision by seven days, but timely as to the second determination. The notice appears to be in a different format than the form notice provided for use by the Commission, and was completed in substantial part by hand. The docket number was handwritten on the notice, but Assam did not identify whether he intended to appeal the first or second decision. Thus, one cannot determine from the face of the notice which order is intended to be the subject of the appeal.
Apparently working on the assumption that Assam intended to appeal the first decision, the Commission ordered Assam to show cause why "the appeal" should not be considered untimely. Assam's response indicated that he understood the mailing of the second decision to subsume and extend the time to appeal both decisions until December 25, 2002, the deadline for the latter. The claimant had apparently confused the appeal deadline date with the overpayment determination deadline date because of the closely dated, staggered mailings. The question before us, therefore, is whether the staggered mailing of the two decisions creating two different twenty-day appeal periods would be "cause" to excuse an otherwise untimely filed appeal.
We agree with the Commission's position that courts only make exceptions for belated appeals where exigent circumstances justify a review or overturning of the referee. § 443.151(4)(b)(3), Fla. Stat. (2002). Due process violations or situations where the decision itself was not timely mailed warrant an exception to the dismissal rule for belated appeals. See Brumm v. Unemployment Appeals Commission, 680 So.2d 1123 (Fla. 1st DCA 1996); Applegate v. National Health Care Affiliates, Inc., 667 So.2d 332 (Fla. 1st DCA 1995); Landrum v. James Rummer Timber Harvesting, Inc., 645 So.2d 577 (Fla. 2d DCA 1994). Obviously, that is not the situation vexing Assam.
Nothing in today's decision should be implied to take away from the iron-clad principle that untimely appeals to the Unemployment Compensation Commission are generally barred. Having said that, we sympathize here with the appellant's position that had the Commission not mailed out two separate letters creating two different twenty day periods, there would not have been confusion as to the appeal deadline. Florida courts under similar circumstances have excused untimeliness when occasioned by the actions of the Commission. See Cornello v. Unemployment Appeals Commission, 624 So.2d 382 (Fla. 4th DCA 1993) (claimant-appellant was denied fundamental due process when applicant was twice misinformed as to his weekly benefit amount and correct information was not mailed to applicant until two days before deadline to file appeal); Pierre v. Oriente Sugar Cane Planting, Inc., 504 So.2d 431 (Fla. 4th DCA 1987) (unemployment compensation claimant, who did not timely receive initial notice of determination pursuant to a misunderstanding as to requirement that he notify claims office of change of address, was denied due process of law when he was thereafter determined to be untimely in his attempt to perfect an appeal of decision to repay money to state). In another case though not exactly on point, but yet involving multiple letters of determination, the Fourth District found that the claimant's appeal was timely filed when a facsimile letter requesting an appeal had been sent between the time frame of the two determination letters. Brooks *981 v. Unemployment Appeals Commission, 760 So.2d 1108 (Fla. 4th DCA 2000).
Here also, applying considerations of fairness and due process, we believe that the claimant Assam accurately and adequately perfected an appeal of the second overpayment determination, for it was timely filed in accordance with Commission rules. Using similar reasoning, Assam's appeal of the first decision is untimely. However, because the overpayment determination is so inextricably intertwined with the initial decision denying benefits, we hold that the claimant is free to raise any and all factual defenses to the underlying decision to contest the overpayment determination. In other words, on the facts of this case, and while it may seem anomalous, it is nevertheless legally permissible on remand to find that the first appeals referee erred in reversing the initial eligibility determination, and thereby reverse the overpayment determination, but at the same time not overturn the underlying decision because that decision was not timely appealed.
Reversed and remanded with instructions.
NOTES
[1] Unemployment benefit claims are administered by the state's Agency for Workforce Innovation. A "determination" is the first level decision that a claimant receives to an application for benefits. If a claimant is dissatisfied with the determination, he or she can appeal to an appeals referee appointed by the agency and thence to a three member Unemployment Appeals Commission. Fla. Stat. § 443.151(3) and (4).