997 So.2d 1188 (2008)
Daniel Edward LOMBARD, Appellant/Cross-Appellee,
v.
Catherine Marie LOMBARD, Appellee/Cross-Appellant.
Nos. 2D07-234, 2D07-2335.
District Court of Appeal of Florida, Second District.
December 19, 2008.
*1189 Allison M. Perry of Law Office of Allison M. Perry, P.A., Tampa, for Appellant/Cross-Appellee.
Ralph P. Mangione of Williams Schifino Mangione & Steady, P.A., Tampa, for Appellee/Cross-Appellant.
NORTHCUTT, Chief Judge.
Daniel Lombard challenges several aspects of the partial final judgment and the supplemental final judgment dissolving his marriage to Catherine Lombard. Mrs. Lombard has cross-appealed on another issue. We affirm the ruling contested in the cross-appeal without further discussion. We also affirm all aspects of the judgments disputed in the main appeal, save certain of the court's rulings concerning Mr. Lombard's visitation with the parties' son. As to those, we reverse and remand for further proceedings in accordance with this opinion.
The court's ruling on visitation is set out in the supplemental final judgment. There are significant errors in the visitation provisions stemming from the court's treatment of both parents' time with their child as "visitation" notwithstanding that it assigned primary residential responsibility to Mrs. Lombard. "Visitation" is not defined in chapter 61, which addresses dissolution of marriage, support, and child custody. But the statutory provisions concerning visitation make clear that the term applies only to the noncustodial parent. See § 61.13(4)(a), Fla. Stat (2006) ("when a noncustodial parent ... who is afforded visitation rights"); (4)(b) ("when a custodial parent refuses to honor a noncustodial parent's visitation rights"); (4)(c) (same); § 61.13001(2)(a) ("if the primary residential parent and the other parent... entitled to visitation rights").[1] As the *1190 primary residential parent, Mrs. Lombard does not have "visitation" with her son. Only the noncustodial parent, Mr. Lombard, has visitation.
The supplemental final judgment divides the visitation schedule into three main components: weekly, summer, and holiday. Mr. Lombard's primary objection concerns the provision addressing holiday vacation. This section of the judgment discusses "make-up time" and highlights the error in treating the child's time with the primary residential parent as if it were visitation. It states:
In the event either party's holiday visitation conflicts with the other party's regularly scheduled visitation day, the other party shall be entitled to make up the lost days by giving the other party forty-five days' notice of the same; the parties to cooperate in facilitating and scheduling the same.
Additionally, in the miscellaneous section addressing visitation, the court ordered that:
Notwithstanding the time sharing schedule set forth herein, neither party shall go more than eight (8) days without an overnight visitation with their son. In the event the schedule results in that possibility, the party shall be entitled to a make-up visit within a thirty (30) day period from the eight (8) day visitation gap, by giving the other party 45 days notice of the same.
As worded, these provisions apply both to Mrs. Lombard, the primary residential parent, and to Mr. Lombard, the noncustodial parent with visitation.
By definition, a child spends less time with his noncustodial parent than with his custodial parent. The problem with granting the custodial parent "make-up visitation" is that it further reduces the noncustodial parent's already limited time with the child. To illustrate, during the school year the judgment affords Mr. Lombard visitation with his son every Monday evening and every third week from Saturday morning to Thursday morning. Thus, over the course of four weeks Mr. Lombard spends five complete days with his son and three additional evenings. Mrs. Lombard has nineteen complete days with her son and several half-days. Under the circuit court's make-up scheme, if Mr. Lombard's winter holiday visitation were to fall during one of Mrs. Lombard's custodial weeks, Mr. Lombard would have to give Mrs. Lombard a week of his normally scheduled visitation. As a result, Mr. Lombard might have no visitation with his child for an entire month. In short, by awarding make-up "visitation" to Mrs. Lombard, the scheme would require Mr. Lombard either to forgo holiday visitation with his son or to "pay" for it by giving up his regular visitation. There being nothing in the record to suggest that this is in the child's best interest or to otherwise justify this inequity, it is an abuse of discretion.
As a general proposition, make-up visitation is granted when the custodial parent has refused visitation to the noncustodial parent. See § 61.13(4)(c); Cancellari v. Rance, 779 So.2d 373, 373-74 (Fla. 2d DCA 2000); LaLoggia-VonHegel v. VonHegel, 732 So.2d 1131, 1133 (Fla. 2d DCA 1999). By design, it gives the noncustodial parent additional time with his child. We do not suggest that make-up visitation is proper only when the custodial parent prevents visitation. Unquestionably, a court may award a noncustodial parent make-up visitation as part of the established visitation schedule to ensure that the schedule is equitable. For example, if Mrs. Lombard's winter holiday vacation was scheduled on the one week that Mr. Lombard has five days' visitation with his son, *1191 awarding him make-up visitation would guarantee that he would not lose that time.
We reverse the portion of the judgment that gives make-up visitation to Mrs. Lombard. On remand, the court may award make-up visitation, but only to Mr. Lombard, the noncustodial parent.
Mr. Lombard also points out that the visitation provisions contain internal conflicts that must be corrected, and we agree. The preamble to the holiday visitation section states that the parties shall alternate the major holidays, including "the child's Winter break from school." Yet the specific subprovision addressing "Winter Visitation" requires the parties to equally divide the child's days off in the winter break. The "weekly visitation" portion of the judgment specifically addresses Mr. Lombard's "visitation" and requires him to deliver his son either to school or to Mrs. Lombard's residence when the visitation period ends. But the "miscellaneous" visitation provision is inconsistentit states that the "party picking up the child for his or her visitation" shall pick him up from school or the driveway of the other party's home. This conflict is, again, a result of the error in deeming Mrs. Lombard's time with the child as "visitation." On remand the circuit court must correct these incompatible provisions. Additionally, the judgment incorrectly refers to the visitation scheme as an agreement between the parties. That designation is inaccurate and must be stricken.
We reverse the visitation portions of the judgment and remand to the circuit court for further proceedings in conformance with this opinion. To the extent that our reversal concerning visitation may affect the parties' child support obligations, the circuit court may revisit that issue on remand. We affirm all other aspects of the judgments.
Affirmed in part, reversed in part, and remanded.
WALLACE, J., and WILLIAMS, CHARLES E., Associate Judge, Concur.
NOTES
[1] We recognize that, effective October 1, 2008, section 61.13, Florida Statutes (2008), replaced the terms "custody" and "visitation" with the concept of a "parenting plan" that includes "time sharing." Ch.2008-61, s. 8 at 793-802, Laws of Fla. This statutory revision does not alter our analysis. It provides that the parenting plan and time sharing schedule must be guided by the best interests of the child and that the court may make such orders as are equitable. § 61.13(3), (5), Fla. Stat. (2008). As such, it is consistent with prior law.