CASANUEVA, Chief Judge.
Katy Bachman (the Mother) appeals the supplemental final judgment that granted Michael McLinn’s (the Father’s) supplemental petition for modification of the pri- or final judgment of dissolution of their marriage and denied her supplemental counterpetition for modification. The modifications related primarily to child custody and child support. The Mother raises five issues on appeal. We reverse.
FACTS
After twenty-five years, the parties’ marriage was dissolved by a final judgment entered on December 80, 2005. The final judgment incorporated a mediated marital settlement agreement (MSA) that designated the Mother as the primary residential parent of the parties’ eight-year-old only child. The MSA provided a routine visitation schedule for the Father. The MSA also included a stipulated amount for the Father’s income despite the fact that his income was in flux at that time.
When certain bills remained unpaid, the Mother moved for contempt asserting that the Father had failed to pay his share of the child’s uncovered medical expenses as the MSA required. A subsequent magistrate’s report concluded that the Father paid the overdue expenses only after the Mother had initiated enforcement proceedings and recommended that the Father reimburse the Mother her filing fees. Shortly thereafter, in early 2007, the Father filed a supplemental petition seeking to modify the terms of the dissolution judgment and its incorporated MSA.
Generally, the Father sought “relief consistent with this Supplemental Petition and such other and further relief as to this court shall seem proper.” One of his pleaded primary claims was that a substantial, material, and unanticipated change in circumstances had occurred since the original custody determination. Thus, he sought a change in the designation of the primary residential parent, claiming that it was in the best interest of the child that the child reside primarily with him or, in the alternative, a downward modification of his child support obligation. His supplemental petition, in seeking to demonstrate the substantial, material, and unanticipated change in circumstances, listed several occasions detailing when the Mother had declined to accede to some of the Father’s demands.
Trial began in January 2010. At trial, however, the Father’s claims differed from what he had pleaded in his supplemental petition. At trial he sought to modify the child support amounts to reflect what he had paid during previous years. He also testified to wanting more time with his child and to be part of shared parenting.
At the close of the Father’s case, the Mother unsuccessfully moved for a directed verdict contending that the Father’s *73 evidence failed to establish that a substantial, material, and unanticipated change in circumstances had taken place to warrant a change from her to him as the primary residential parent. Over the Mother’s objection, the trial court also granted the Father’s motion to amend the pleadings to conform to the evidence.
PRIMARY RESIDENTIAL PARENT VERSUS TIME SHARING
The legislature of our state amended section 61.13, Florida Statutes (2008), effective October 1, 2008. Lombard v. Lombard, 997 So.2d 1188, 1190 n. 1 (Fla. 2d DCA 2008). Among the various amendments were those removing statutory references to “custody,” “primary residence,” “primary residential parent,” and “visitation”; substituted were terms such as “parenting plan,” which includes “time sharing.” Cobo v. Sierralta, 13 So.3d 493, 501 n. 4 (Fla. 3d DCA 2009). Thus, section 61.13(2)(c)(l) now directs that “[tjhere is no presumption for or against the father or mother of the child or for or against any specific time-sharing schedule when creating or modifying the parenting plan of the child.”
The supplemental final judgment is couched in language of “time sharing,” i.e., the language of section 61.13 as amended in 2008. The Father concedes that the trial court was erroneously asked to and did apply the newly amended statute in reaching its ultimate conclusions. This was error because the parties’ case must be decided under the prior version of the statute.
A factually similar case is Hahn v. Hahn, 42 So.3d 945 (Fla. 4th DCA 2010). There, in 2005, the trial court entered a final judgment dissolving the parties’ marriage that incorporated an MSA. In 2007, each parent filed a supplemental petition seeking modification of visitation and time sharing. Applying the 2008 amendments to section 61.13, the trial court removed Mrs. Hahn’s designation as the primary residential parent, ordered a fifty-fifty time sharing plan for the parties with their children, and reduced Mr. Hahn’s child support obligation.
On appeal, Mrs. Hahn contended that the retroactive application of section 61.13 as amended in 2008 was improper. The Fourth District agreed, saying: “A statute is not operative as law until the date at which it takes effect [,] and it operates prospectively unless the intent that it operate retrospectively is clearly expressed.” Id. at 947 (quoting Imperial Point Colonnades Condo., Inc. v. Freedom Props. Int'l Inc., 349 So.2d 1194, 1195 (Fla. 4th DCA 1977)). This is particularly true because there are instances where retrospective operation of the law would act to impair or destroy existing rights. Id. (citing Horn v. Fla. Dep’t of Revenue ex rel. Abel, 752 So.2d 687, 688 (Fla. 3d DCA 2000)). The Fourth District concluded that the application of the statute “clearly impaired the former wife’s existing rights over her children.” Id.
We reach the same conclusion. Here, the Mother’s rights were set forth in a contract that utilized then-existing statutory law. The retrospective application of the new statute would impair those rights. We agree, too, with the Fourth District’s conclusion that the legislature did not intend the retroactive application to child custody judgments which became final before the effective date of the legislation.
We observe that the trial court did not have the benefit of Hahn because it issued after the instant proceedings had concluded. The primary residential custody of the parties’ child as outlined in the MSA shall be returned to the Mother immediately.
*74 CHILD SUPPORT
A prerequisite to bringing an action seeking a modification of court-ordered child support payments is a showing of a substantial change in circumstances.
The burden of establishing that a reduction is necessary is on the party seeking modification. Moreover, when, as in the instant case, the child support was based on an agreement by the parties that was subsequently incorporated into an order, a heavier burden rests on the party seeking a reduction than would otherwise be required.
Overbey v. Overbey, 698 So.2d 811, 813-14 (Fla.1997) (citations omitted); see also Catalano v. Catalano, 787 So.2d 243, 245 (Fla. 2d DCA2001).
Prior to the parties moving to Florida and before each entered into the MSA, the Father earned $80,000 per year as a tax software developer. Upon relocating to Florida, he opened a business preparing tax returns. Business for the start-up enterprise was slow. But, when the parties divorced in 2005, they agreed and stipulated that the Father would have $36,000 per year of income imputed to him.
At the hearing, the evidence showed the Father, in addition to operating his tax return preparation business, did seasonal tax preparation for an accounting firm earning a salary of $14 per hour plus a thirty-percent commission on the revenues he generated. Additionally, he worked as a substitute teacher. He also testified that his income had returned to the $36,000-per-year rate, the amount imputed to him during the dissolution. But he now wished to retrospectively reduce the amount of child support that accrued during the three years it took for the case to be tried, years when he earned substantially less than $36,000.
The Mother presented evidence through a vocational expert witness that the Father was voluntarily underemployed during the intervening years and should not have this underemployment ratified by reducing his child support payments. The Father did not present rebutting evidence except his own testimony. In light of the stipulated amount of income in the MSA, the Father has not produced sufficient, competent evidence to show a substantial, material, and unanticipated change in circumstances to merit a downward modification of his child support obligation.
AMENDING THE PLEADINGS
Furthermore, it was error to allow the Father to amend his pleadings to conform to the evidence over the Mother’s objection. This deprived the Mother of the opportunity to prepare for the case that he actually presented rather than for the one he pleaded, which was what she was expecting to defend. See Pro-Art Dental Lab, Inc. v. V-Strategic Group, LLC, 986 So.2d 1244, 1252 (Fla.2008) (referencing “Fla. R. Civ. P. 1.190, ed. cmt. (‘Amendments under paragraph (b) of this rule [“Amendments to Conform with the Evidence”] can be made at any time but they must not prejudice the opposing party.’ ”) (emphasis supplied by supreme court); Blanton v. Baltuskouis, 20 So.3d 881 (Fla. 4th DCA 2009) (holding it error and reversing where the trial court granted a motion to amend the pleadings to conform to the evidence when the plaintiff had sued for specific performance but tried a case for damages for breach of contract).
REMAINING ISSUES
The Mother raised other issues but given the disposition of this appeal, we deem it unnecessary to address them.
*75 CONCLUSION
The record in this case fails to establish that the Father met his heavy burden to modify the final judgment of dissolution. It was also error to apply the new statute to these parties’ situation. For these reasons, the supplemental final judgment must be reversed.
Reversed and remanded with instructions to enter judgment in favor of the Mother.
LaROSE and BLACK, JJ., Concur.