Damoorgian, J.
JPMorgan Chase Bank National Association appeals the court’s entry of final judgment in favor of Alfred and Anicile Jean Pierre (“Borrowers”) following a bench trial. We reverse for entry of judgment of foreclosure in favor of JPMorgan because the judgment on appeal is contrary to the applicable law and the evidence in this case.
In November of 2013, JPMorgan filed a one count residential mortgage foreclosure suit against Borrowers, attaching a copy of the Note and Mortgage to the complaint. The Note was executed on May 18, 2005 and reflected that the original lender was Washington Mutual Bank, FA. The copy of the Note attached to the complaint also bore a blank indorsement. On the same day it filed the complaint, JPMorgan’s counsel filed a Certificate of Physical Possession of Original Note in which it certified that it was, as JPMorgan’s representative in the lawsuit, in physical possession of the original Note indorsed in blank as of October 9, 2013. This October date is significant because it is before the date the complaint was filed. JPMorgan later amended its complaint to clarify that it was “in physical possession of the Note [ijndorsed in blank” and was, therefore, the holder of the Note.
Almost three years later, the matter proceeded to a bench trial. At the trial, JPMorgan introduced Daniela Lopez as a witness. Ms. Lopez worked as a case manager for PennyMac Loan Services, LLC which serviced Borrowers’ loan on behalf of JPMorgan, and was extensively trained as to both the original lender, Washington Mutual Bank’s, and JPMorgan’s record keeping policies and procedures. Ms. Lopez testified JPMorgan acquired all of the original lender’s, Washington Mutual Bank, assets through the FDIC and upon doing so, kept all of the same record keeping policies and procedures as Washington Mutual Bank. Additionally, she testified that the loan’s servicer, PennyMac, went through a loan boarding process whereby it reviewed, vetted, and uploaded all of the *636 existing loan documents into its imaging system. Ms. Lopez explained in detail how the process worked.
Through Ms. Lopez, JPMorgan introduced the Note and Mortgage, which were identical to those attached to the complaint, into evidence. A loan payment history was also introduced based on the boarded and verified records of all of the loan servicer(s).
In addition to the foregoing, JPMorgan also sought to introduce the breach letter sent to Borrowers by “Washington Mutual Home Loans.” Ms. Lopez explained that “Washington Mutual Home Loans” was under the umbrella of Washington Mutual Bank. She further explained that during her training, she learned that once a loan was in default, it was the regular business practice of Washington Mutual Bank to have its collections department create a default letter, print and mail out the letter to the borrower, and then upload the letter into its imaging system. She also testified that PennyMac’s boarding department verified the default letter’s accuracy and that it was actually mailed by checking with the prior servicer and/or cross-referencing the collection and servicing notes. Despite this extensive testimony, the court precluded JPMorgan from introducing the breach letter into evidence on Borrowers’ hearsay objection, ruling that JPMorgan did not submit sufficient evidence regarding the record keeping practices of “Washington Mutual Home Loans.”
During its cross-examination of the witness, Borrowers’ counsel asked when the blank indorsement was placed on the Note. Ms. Lopez responded that she did not know, but speculated that it was probably around the time the Note was transferred from Washington Mutual Bank to JPMor-gan. Ms. Lopez also testified on cross that PennyMac Corp. was the owner of the subject mortgage which was transferred via an assignment. She further testified that PennyMac Corp. was the owner of the Note.
At the close of JP Morgan’s case, both parties rested. Borrowers’ counsel argued that judgment should be entered in their favor because: 1) absent the breach letter, JPMorgan did not prove it complied with the pre-suit notice conditions outlined in the mortgage, and 2) JPMorgan did not prove it had standing to enforce the Note since its witness testified that a different entity owned the Note. JPMorgan countered that there was testimonial evidence establishing that a breach letter was sent and received, and asserted that ownership of the Note was a non-issue since it was pursuing the suit based on its status of holder of the Note indorsed in blank. The court entered judgment in favor of Borrowers, reasoning:
[JPMorgan] had issues with the Default Letter and I think there are inconsis-tences with the transfer and also with Pennymac Corp. as an owner as being another big issue.
This appeal follows.
We apply a de novo standard of review when reviewing whether a party has standing to bring an action. Boyd v. Wells Fargo Bank, N.A., 143 So.3d 1128, 1129 (Fla. 4th DCA 2014). As we recently explained:
At this juncture in the development of foreclosure law, it is more than well established that a plaintiff must prove that it had standing to foreclose when the complaint was filed. A party may establish standing by showing that it was entitled to enforce the note at the time it filed suit. A person entitled to enforce’ an instrument is: (1) [t]he holder of the instrument; (2) [a] nonholder in possession of the instrument who has the rights of a holder; or (3) [a] person *637 not in possession of the instrument who is entitled to enforce the instrument pursuant to s[ection] 673.3091 or section] 673.4181(4). A holder is [t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession. Thus, to be a holder, the instrument must be payable to the person in possession or indorsed in blank. A holder seeking to enforce a note indorsed in blank must prove that it was in physical possession of the note at the time it filed suit.
U.S. Bank Nat’l Ass’n v. Becker, 211 So.3d 142, 2017 WL 514340, (Fla. 4th DCA Feb. 17, 2017) (citations and internal quotation marks omitted).
Importantly, a holder is entitled to enforce a note even if it “is not the owner of the instrument or is in wrongful possession of the instrument.” § 673.3011, Fla. Stat. (2013).
Here, JPMorgan attached a copy of the Note bearing a blank indorsement to its complaint and presented the original Note, which was identical to the copy attached to its complaint, at trial. In doing so, JPMorgan established that it had possession of the Note indorsed in blank at the time it filed suit and, therefore, established that it had standing as holder of the Note. Becker, 211 So.3d at 144. The fact that another entity may have been the owner of the Note has no bearing on JPMorgan’s status as holder. § 673.3011, Fla. Stat. (2013). See also Tilus v. AS Michai LLC, 161 So.3d 1284, 1286 (Fla. 4th DCA 2015) (“[U]nder the Uniform Commercial Code, a plaintiff is not required to be both the owner and holder of the note in order to have standing to foreclose”).
Appellees attempt to avoid the implications of what is now basically blackletter law by arguing that the court made a discretionary factual call which was supported by JPMorgan’s witness’ inability to testify as to when the indorsement was placed on the Note. We reject this argument. The issue of exactly when the in-dorsement was placed on the Note is irrelevant since it is undisputed that the blank indorsement was on the Note at the point JPMorgan filed its lawsuit. See Ortiz v. PNC Bank, Nat’l Ass’n, 188 So.3d 923, 925 (Fla. 4th DCA 2016).
In sum, by attaching a copy of the Note bearing a blank indorsement to its complaint and later introducing the original Note bearing the same indorsement at trial, JPMorgan established it had standing as holder of the Note. The court’s conclusion to the contrary was clearly erroneous.
Likewise, the court’s ruling that the breach letter was inadmissible due to JPMorgan’s failure to adequately lay a foundation for its admission under the business records hearsay exception was incorrect. Pursuant to section 90.803(6)(a), Florida Statutes (2013), in order to admit business records which would otherwise constitute hearsay, “the proponent must show that (1) the record was made at or near the time of the event; (2) was made by or from information transmitted by a person with knowledge; (3) was kept in the ordinary course of a regularly conducted business activity; and (4) that it was a regular practice of that business to make such a record.” Yisrael v. State, 993 So.2d 952, 956 (Fla. 2008). The foundation necessary for admission of a business record may be established by a records custodian or other qualified witness. § 90.803(6)(a), Fla. Stat. (2013). The witness authenticating the records “need not be the person who actually prepared the business records.” Cayea v. CitiMortgage, Inc., 138 So.3d 1214, 1217 (Fla. 4th DCA 2014) (cita *638 tion and internal quotation marks omitted). Instead, “the witness just need be well enough acquainted with the activity to provide testimony.” Id.
Our recent holding in Wells Fargo Bank, N.A. v. Balkissoon, 183 So.3d 1272 (Fla. 4th DCA 2016) discussed a set of facts strikingly similar to those in the instant case. In Balkissoon, the holder of a note attempted to introduce a breach letter into evidence through its servicer’s representative. Id. at 1274. The servicer’s representative testified that the breach letter was created and sent out by a third party vendor pursuant to the servicer’s request. Id. Although the representative was not familiar with the third party vendor’s corporate structure or practices or procedures, we held that he properly laid the foundation for the admission of the letter when he “demonstrated that he was sufficiently familiar with [the servicer’s] practice and procedure for generating and sending the default notice.” Id. at 1277. Specifically, the witness;
[TJestified that the notice was made at or near the time of the events reflected therein and made by or from information transmitted by people with knowledge. Each night, [the servicer] transmitted the information for loans in default to [the third party vendor] over a secure connection. [The third party vendor] used [the servicer’s] template to create the notice within two days of receiving the loan information. [The third party vendor] did not generate any of the information in the notice. [The witness] testified that the copy of the notice was kept in the ordinary course of [the servicer’s] regularly conducted business activity and it was the regular practice of [the servicer] to make this record. Once [the third party vendor] generated the notice and mailed it, [the servicer] kept a copy of the notice in its records and made a note of the mailing date.

Id.

The testimony of JPMorgan’s witness, Ms. Lopez, is indistinguishable from the testimony provided by the records custodian in Balkissoon. Like the records custodian there, Ms. Lopez was familiar with how the original lender and servicer, Washington Mutual Bank, created, sent out, and stored default letters within its normal course of business. Specifically, she testified that once a loan was in default, it was the regular business practice of Washington Mutual Bank to have its collections department create a default letter, print and mail out the letter to the borrower, and then upload the letter into its imaging system. Additionally, the current servi-cer’s, PennyMae, boarding department verified the default letter’s accuracy and that it was actually mailed by checking with the prior servicer and/or cross-referencing the collection and servicing notes.
Despite this testimony, the court excluded the letter on the grounds that it was purportedly sent by “Washington Mutual Home Loans” and JPMorgan failed to present any evidence of the policies and procedures of Washington Mutual Home Loans. This ruling was erroneous for two reasons. First, Ms. Lopez testified that Washington Mutual Home Loans was a department within Washington Mutual Bank, FA. This in itself was sufficient to establish the hearsay exception. Second, we note that our holding in Balkissoon establishes that it was not necessary for JPMorgan to submit any evidence of Washington Mutual Home Loans' corporate structure or practices and procedures in order to lay the foundation for the letter’s admission under the business records hearsay exception. The letter was admissible under the exception so long as JPMor-gan’s witness “demonstrated that [she] *639 was sufficiently familiar with [the then ser-vicer’s] practice and procedure for generating and sending the default notice.” Balkissoon, 183 So.3d at 1277. As JPMorgan’s witness’ testimony demonstrated her familiarity with Washington Mutual Bank’s practices and procedures for generating the breach letter, the court erred in excluding it from evidence.
Based upon the evidence presented, JPMorgan was entitled to the entry of a judgment of foreclosure against the Borrowers. Accordingly, we reverse and remand with instructions to enter judgment in favor of JPMorgan.

Reversed and remanded.

May and Conner, JJ., concur.