NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

ISAIAH L. SPENCER and SHATIKA L. SPENCER,          )
                                                   )
                                                   )
          Appellants,                              )
                                                   )
v.                                                 )          Case No. 2D16-4817
                                                   )
DITECH FINANCIAL, LLC; CITIBANK,                   )
NATIONAL ASSOCIATION successor                     )
by merger to CitiBank, FSB; CITY OF                )
TAMPA, FLORIDA; RIVERWALK AT                       )
WATERSIDE ISLAND TOWNHOMES                         )
HOMEOWNERS ASSOCIATION, INC.;                      )
WATERSIDE COMMUNITY                                )
ASSOCIATION, INC.,                                 )
                                                   )
          Appellees.                               )
_____)

Opinion filed April 4, 2018.

Appeal from the Circuit Court for
Hillsborough County; Sandra Taylor, Senior
Judge.

Mark P. Stopa of Stopa Law Firm, LLC,
Tampa; and Latasha Scott of Lord Scott,
PLLC, Tampa, for Appellants.

Jonathan L. Blackmore and John D. Cusick
of Phelan, Hallinan, Diamond & Jones,
PLLC, Fort Lauderdale, for Appellee Ditech
Financial, LLC.

No appearance for remaining Appellees.

KHOUZAM, Judge.

Isaiah and Shatika Spencer appeal the final judgment of foreclosure entered against them and in favor of EverHome Mortgage Company following a bench trial. Ditech Financial, LLC, was later substituted as party plaintiff for EverHome. We reverse and remand for the trial court to enter an order of involuntary dismissal because EverHome, Ditech's predecessor in interest, failed to establish as a condition precedent to filing suit that the Spencers were given notice of default as required by paragraph 22 of the mortgage.

The Spencers executed the note and mortgage on March 28, 2003. Federal National Mortgage Association was the lender. Paragraph 22 of the mortgage provided that prior to acceleration, the lender must give the borrower notice and an opportunity to cure the default. Paragraph 15 provided that any such notice must be written and "shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means."

In 2010, EverHome filed a foreclosure complaint against the Spencers. EverHome alleged that it was the servicer of the loan and the holder of the note. EverHome also alleged generally that all conditions precedent to the acceleration of the note and mortgage and the filing of the foreclosure suit had been fulfilled. The Spencers filed an answer denying that the conditions precedent had been met and an affirmative defense alleging that EverHome had failed to give them notice and an opportunity to cure as required.

At trial, EverHome admitted a default letter from EverHome to Mr. Spencer through the testimony of Ms. Knight, an employee of Ditech. Ms. Knight testified to the

general industry standards and practices followed by servicers such as Ditech and EverHome to advise borrowers that their loans are in default. She identified the default letter addressed to Mr. Spencer and described the process by which the letter was generated and kept in the ordinary course of business.

In addition to the default letter itself, Ms. Knight's testimony was the only evidence that EverHome provided to show that the letter had been sent to the Spencers. Throughout Ms. Knight's testimony, Spencer repeatedly objected based on hearsay, arguing that Ms. Knight lacked personal knowledge to testify about EverHome's routine business practices because she was not an employee of EverHome. The court overruled Spencer's objections, and Ms. Knight testified that pursuant to EverHome's procedure and policy, once a letter is generated it is mailed. But she explained that her knowledge of these procedures and policies was based on "training." And when pressed, she admitted that this "training" consisted of informally discussing EverHome's policies and procedures with coworkers who currently worked for Ditech but had previously worked for EverHome.

Specifically, Ms. Knight testified as follows: "I have spoken with EverHome employees who are prior employees of EverHome, as we are instructed to by our supervisor as part of training because we are not going to travel every day to Jacksonville to sit down with someone when we have questions." Ms. Knight admitted that no such discussions about this loan or any other loan had taken place prior to 2014, when the service transfer occurred—years after the default letter, dated June 17, 2010, had been generated by EverHome. She further admitted that she had never worked for EverHome, had never sent default letters on behalf of EverHome, and had not read

EverHome's written policies and procedures from June 2010.  Ms. Knight admitted that she was not personally involved in sending the default letter at issue in this case and that she did not have any documents other than the letter itself to show that the letter was sent.

This evidence was insufficient to show that the default letter was actually sent.  "The fact that a document is drafted is insufficient in itself to establish that it was mailed."  Allen v. Wilmington Tr., N.A., 216 So. 3d 685, 687-88 (Fla. 2d DCA 2017); see also Edmonds v. U.S. Bank Nat'l Ass'n, 215 So. 3d 628, 630 (Fla. 2d DCA 2017) (citing Allen with approval).  Rather, "mailing must be proven by producing additional evidence such as proof of regular business practices, an affidavit swearing that the letter was mailed, or a return receipt."  Allen, 216 So. 3d at 688.

Testimony regarding a company's routine business practices may establish a rebuttable presumption that the default letter was mailed.  Id. (citing § 90.406, Fla. Stat. (2014)).  But the witness must have personal knowledge of the company's general mailing practice—meaning that the witness must be employed by the entity drafting the letters and must have firsthand knowledge of the company's routine practice for mailing letters.  See id.; Edmonds, 215 So. 3d at 630; see also CitiMortgage, Inc. v. Hoskinson, 200 So. 3d 191, 192 (Fla. 5th DCA 2016) (holding that there was sufficient evidence to establish mailing based on routine business practices where witness testified that she had personally observed coworkers generate breach letters and deliver them to the mail room to be collected by the postal service).  Here, Ms. Knight admitted that she was never employed by EverHome and did not have firsthand knowledge of EverHome's mailing practices as of the date the default letter

- 4 -

was generated.  Therefore, her testimony was insufficient to establish that the default letter was mailed.

Ditech relies on JPMorgan Chase Bank National Ass'n v. Pierre, 215 So. 3d 633 (Fla. 4th DCA 2017), and Bank of America, N.A. v. Delgado, 166 So. 3d 857 (Fla. 3d DCA 2015), to suggest that Ms. Knight's testimony was sufficient to establish mailing.  These cases do not apply here because they addressed the sufficiency of evidence demonstrating an entity's boarding process to establish the admissibility of documents like default letters under the business records exception to the hearsay rule, as opposed to the sufficiency of evidence demonstrating an entity's routine business practices to establish that a default letter was mailed.  See Allen, 216 So. 3d at 687; Pierre, 215 So. 3d at 637-39; Delgado, 166 So. 3d at 859.  It is true that in establishing admissibility under the business records exception, there is no requirement that the foundational witness be employed by the business whose records are at issue at the time the records were made.  See Delgado, 166 So. 3d at 860.  And basic familiarity with the previous servicer or lender's practices for generating, storing, and sending a default notice in the normal course of business is all that is required to establish the admissibility of a default notice under the business records exception.  See Pierre, 215 So. 3d at 638-39 (citing Wells Fargo Bank, N.A. v. Balkissoon, 183 So. 3d 1272, 1277 (Fla. 4th DCA 2016)).  But the admissibility of the default letter is not at issue in the instant case.

Because EverHome failed to show that it satisfied the condition precedent of giving notice prior to acceleration, we must reverse and remand for the trial court to enter an order of involuntary dismissal.

Reversed and remanded with instructions.


ROTHSTEIN-YOUAKIM, J., Concurs.
SALARIO, J., Concurs specially.


SALARIO, Judge, Specially concurring.

The Spencers argue in this appeal that the evidence was insufficient to sustain the judgment. They correctly point out that EverHome's sole trial witness, Ms. Knight, lacked any personal knowledge of EverHome's routine practice concerning the mailing of paragraph 22 letters and that without her testimony the evidence was insufficient as a matter of law to support a finding that such a letter was mailed to them. I agree with the reasoning of and the result reached by the majority, including the instruction that the trial court enter an order of involuntary dismissal instead of hold a new trial on remand, because I think as the majority does that both are compelled by our decisions in Edmonds, 215 So. 3d at 631, and Allen, 216 So. 3d at 688. See also Knight v. GTE Fed. Credit Union, 43 Fla. L. Weekly D348 (Fla. 2d DCA Feb. 14, 2018). I write to express my growing unease with what we are saying in foreclosure cases about proceedings on remand when the plaintiff as appellee in our court has failed to prove at trial an element of or condition precedent to bringing the foreclosure action.

Outside the foreclosure context, our court routinely follows the general rule that a party that fails to meet its burden of proof in the trial court does not, when we reverse a judgment in its favor, get a second bite at the apple by way of a new trial or hearing on remand. See, e.g., Asset Mgmt. Holdings, LLC v. Assets Recovery Ctr. Invs., LLC, 43 Fla. L. Weekly D458 (Fla. 2d DCA Feb. 23, 2018); Airsman v. Airsman,

179 So. 3d 342, 345 (Fla. 2d DCA 2015); Carlough v. Nationwide Mut. Fire Ins. Co., 609 So. 2d 770, 771-72 (Fla. 2d DCA 1992) (citing In re Forfeiture of 1987 Chevrolet Corvette, 571 So. 2d 594, 596 (Fla. 2d DCA 1990)). This is as it should be: The interests of the parties and the judicial system in finality and in avoiding drawn-out, expensive, piecemeal litigation require that the parties and the courts regard the trial as the brass ring and not as the first step of an odyssey to an eventual result many proceedings away. See Carlough, 609 So. 2d at 772; Morton's of Chi., Inc. v. Lira, 48 So. 3d 76, 79-80 (Fla. 1st DCA 2010). Thus, although we have departed from the rule when a party that won in the trial court was denied a fair opportunity to present its full case during the first trial, see Elder v. Farulla, 768 So. 2d 1152, 1155 (Fla. 2d DCA 2000), the default position is that there is no new trial when a party fails to prove its case and we reverse a judgment in its favor on appeal. My own inclination is that the interests served by the rule demand that a party present compelling equitable circumstances to justify a departure from this default position. See Morton's of Chi., 48 So. 3d at 80. And I am inclined to adhere to that standard in circumstances where, as here, the party's proof was rendered insufficient by our determination on appeal that the only evidence it offered to prove a controlling point on which it bore the burden of proof was not admissible.

Something different, however, seems to be happening in foreclosure cases. We have been determining whether to grant a new trial according to considerations that either appear alien to those that underlie the general rule or that are not clearly tied to a legal principle we can apply across cases (or both). For example, in cases where we reverse a judgment of foreclosure because a plaintiff failed to adduce

legally sufficient evidence proving the amount of the defendant's indebtedness—an element of its claim for foreclosure[1]—our most recent cases hold that a new trial is proper where a plaintiff has introduced "some evidence" of that amount, either admissible or inadmissible, and that involuntary dismissal is required when it has "failed to offer <u>any</u> evidence" of that amount.  <u>Paeth v. U.S. Bank Nat'l Ass'n</u>, 220 So. 3d 1273, 1275 (Fla. 2d DCA 2017) (emphasis in original) (holding that plaintiff was entitled to a new trial on the amount of indebtedness where it introduced some evidence of the amount, but the evidence was legally insufficient); <u>see also</u> <u>Evans v. HSBC Bank, USA, Nat'l Ass'n</u>, 223 So. 3d 1059, 1063-64 (Fla. 2d DCA 2017) (characterizing amount of indebtedness as "damages" and remanding for new trial where plaintiff presented "some" evidence of indebtedness, but the evidence was not admissible).  The cases do not, however, explain whether or how this some-evidence-no-evidence test relates to the general rule against allowing new trials when a plaintiff fails to meet its burden of proof, the policies underlying that rule, or any compelling equity that would justify making an exception to it in a particular case.  Nor do they explicitly state any principle that limits that test to a foreclosure plaintiff's proof of the amount of indebtedness—as distinguished from, say, standing, default, or compliance with paragraph 22—or, indeed, that limits the test to foreclosure cases at all.

In other decisions, our consideration of whether to remand for a dismissal or a new trial when a foreclosure plaintiff has failed to prove its case appears to have

---

[1]<u>See</u> <u>Ernest v. Carter</u>, 368 So. 2d 428, 429 (Fla. 2d DCA 1979) (stating that proof of the amount due is necessary to establish entitlement to foreclose); <u>see also</u> <u>Liberty Home Equity Sols., Inc. v. Raulston</u>, 206 So. 3d 58, 60 (Fla. 4th DCA 2016) (stating that proof of the amount due is part of a foreclosure plaintiff's prima facie case); <u>Bank of Am., N.A. v. Delgado</u>, 166 So. 3d 857, 859 (Fla. 3d DCA 2015) (characterizing the amount of indebtedness as an "element" of the foreclosure plaintiff's case).

hinged on whether the trial court erroneously admitted some evidence offered by the plaintiff. See, e.g., Heller v. Bank of Am., N.A., 209 So. 3d 641, 645 (Fla. 2d DCA 2017) (remanding for new trial where trial court erroneously admitted a copy of a note to prove its contents in violation of the best evidence rule); Sas v. Fed. Nat'l Mortg. Ass'n, 112 So. 3d 778, 780 (Fla. 2d DCA 2013) (remanding for new trial where proof of amount due was based on inadmissible evidence the trial court erroneously admitted). These are cases where, as here, had the inadmissible evidence not been admitted, the remaining evidence (if any) would have been insufficient to permit a judgment in the plaintiff's favor.[2] Although we have not explicitly stated what considerations drive the result in those circumstances, allowing a new trial where the trial court has erroneously admitted some of the plaintiff's evidence and the remaining evidence is insufficient might be linked to the notion that the plaintiff was denied a fair opportunity to present its case—i.e., that the trial court's erroneous admission of some of the plaintiff's evidence induced

---

[2]Although it is commonly assumed in the civil context that a new trial is the correct instruction on remand in such cases, I have as yet been unable to locate any decision of ours that so holds. But see Walker v. State, 988 So. 2d 6, 10 (Fla. 2d DCA 2007) (Altenbernd, J., concurring) (stating in a concurring opinion that this has been a general practice in civil cases), quashed on other grounds by State v. Walker, 992 So. 2d 232 (Fla. 2008). As the cases cited in the text demonstrate, there are circumstances in which our court and others have declined to afford a new trial where a foreclosure plaintiff's only evidence on a point was inadmissible, leaving the balance of the evidence legally insufficient. Such circumstances are distinguishable from the more common circumstance in which a party convinces a trial court to admit inadmissible evidence and the resulting error is harmful, notwithstanding the fact that other admissible evidence produced by that party might be sufficient to sustain a judgment in that party's favor. In that situation, we direct a new trial not to protect some interest of the party that offered the inadmissible evidence, but because we cannot say that the admission of that evidence did not affect the outcome of the trial. See, e.g., Soto v. McCulley Marine Servs., Inc., 181 So. 3d 1223, 1226 (Fla. 2d DCA 2015); Swanson v. Robles, 128 So. 3d 915, 919-20 (Fla. 2d DCA 2013).

the plaintiff not to present other evidence that would have been admissible and that would have proved the same point.

But if that is the basis for these decisions, we have not said so. Nor have we explained why there should be a categorical distinction between pure sufficiency problems and admissibility problems that lead to sufficiency problems. On the contrary, other cases seem to suggest that determining whether a new trial is necessary in a case involving an admissibility issue that creates a sufficiency problem requires a fact-specific inquiry rather than a categorical rule. See, e.g., Mathis v. Nationstar Mortg., LLC, 227 So. 3d 189, 193 (Fla. 2d DCA 2017) (remanding for involuntary dismissal where trial court erroneously allowed witness to testify, over objection, to the contents of an allonge in violation of the best evidence rule and the original was not produced); Holt v. Calchas, LLC, 155 So. 3d 499, 507 (Fla. 4th DCA 2015) (remanding for involuntary dismissal where plaintiff's only evidence that a paragraph 22 letter was sent was hearsay that was erroneously admitted over objection); Burdeshaw v. Bank of N.Y. Mellon, 148 So. 3d 819, 826-27 (Fla. 1st DCA 2014) (reversing foreclosure judgment based on an evidentiary error and remanding for order of involuntary dismissal where remand for new trial was inappropriate under the facts of the case).

This case provides a good example of why a categorical distinction between pure sufficiency and admissibility cases may not make sense. Here, it is hard to imagine that if the trial court had correctly excluded Ms. Knight's routine practice testimony, EverHome would have been prepared to produce other admissible evidence that the paragraph 22 letter was mailed to the Spencers. It seems obvious that a person without personal knowledge of a party's routine business practice cannot testify

as to that practice or parrot the hearsay statements of others to establish it.  See

§§ 90.604, .802, Fla Stat.  Yet Ms. Knight was the only witness EverHome decided to

bring to the trial, and her testimony established that she had no knowledge to impart

about the mailing of the paragraph 22 letter apart from her inadmissible testimony

concerning routine practice.  Had the trial court excluded that evidence, to which the

Spencers contemporaneously objected, it seems quite certain that EverHome would

simply have failed to prove compliance with paragraph 22.  And had the trial court

rendered a judgment of foreclosure notwithstanding that failure of proof, we would likely

remand for an order of involuntary dismissal under the rule that a plaintiff that fails to

prove its case does not get a second bite at the apple on remand.  Granting a new trial

here simply because the trial court admitted some plainly inadmissible testimony does

not seem to protect legitimate reliance on a trial court's evidentiary ruling; rather, it

seems to reward either (or both) a litigant's insufficient trial preparation or a strategic

decision that it might be able to convince a court to admit clearly inadmissible

evidence—precisely the kinds of results the general rule against granting a new trial

when a party fails to prove its case the first time around is designed to avoid.[3]

In the interest of brevity, I am oversimplifying a bit.  There is more to our

decisions on the scope of remand in foreclosure cases than this opinion allows.  My

point, however, is that we are making decisions about when a foreclosure plaintiff gets

an involuntary dismissal or a new trial based on considerations that do not bear an

---

[3]My instinct on this may be wrong.  Perhaps there is a solid doctrinal reason for categorically regarding pure sufficiency cases differently from cases involving an admissibility problem, or maybe it is just more desirable to have a categorical rule that grants a new trial to avoid having to engage in this inquiry in every case.  My main concern, as explained in the text, is that we are not really stating a legal principle that drives the result in these cases.

- 11 -

obvious relationship to the rule governing the consequences of a party's failure to meet its burden of proof that we apply in cases other than foreclosures and that we may not be able to limit to the foreclosure context on a principled basis. Someday, for instance, a lawyer is going to ask that we apply the some-evidence-no-evidence rule in a garden variety contract or tort case, a result we may well consider unadvisable. At least on the basis of what our opinions say, "that is a foreclosure rule" may be the only answer we are able to give for not extending it. But that answer is not going to be a credible or persuasive one. Speaking for myself, I would be open to examining these issues in an appropriate case as a full court with the object of settling on a general approach that we can apply on a principled basis across cases.