NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


PEGGY A. THORLTON and WILLIAM D. )
THORLTON, )
  )
      Appellants, )
  )
v. )    Case No. 2D17-2328
  )
NATIONSTAR MORTGAGE, LLC, )
  )
      Appellee. )
_____ )

Opinion filed October 17, 2018.

Appeal from the Circuit Court for Highlands
County; Michael R. Raiden, Judge.

Randall O. Reder of Randall O. Reder, P.A.,
Tampa, for Appellants.

Nancy M. Wallace and Ryan D. O'Connor
of Akerman LLP, Tallahassee; William P.
Keller of Akerman LLP, Fort Lauderdale;
and David A. Karp of Akerman LLP, Tampa,
for Appellee.


MORRIS, Judge.

      Peggy A. and William D. Thorlton appeal the final judgment of foreclosure

entered against them and in favor of Nationstar Mortgage, LLC, following a bench trial.

For the reasons we explain, we conclude that Nationstar adequately established that its

predecessor in interest, Chase Home Finance a/k/a JPMorgan Chase Bank National Association satisfied a condition precedent to filing suit: providing written notice of default as required by paragraph 22 of the mortgage.  Thus we affirm on that issue.  We affirm on all other issues without further comment.

## BACKGROUND

On May 13, 2003, the Thorltons executed a promissory note and mortgage in favor of Wachovia Mortgage Corporation.  Paragraph 22 of the mortgage provided that prior to acceleration, the lender must give the borrower notice and an opportunity to cure the default.  Paragraph 15 provided that any such notice must be written and that it "shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means."

In 2008, Chase Home Finance filed a foreclosure complaint against the Thorltons.  Chase alleged that it was the servicer of the loan and acting on behalf of the owner.  That complaint alleged generally that all conditions precedent to the acceleration of the note and mortgage had been performed.

Chase subsequently filed two motions for substitution of party plaintiff, alleging first that it had merged with JPMorgan Chase Bank N.A. and, at a later time, that it had become organized under a new charter and had changed its name to JPMorgan Chase Bank, National Association.  In July 2016, prior to trial, a motion to substitute Nationstar as the party plaintiff was filed and ultimately granted.

At trial, Nationstar admitted a copy of the default letter purportedly mailed to the Thorltons on October 2, 2008, in compliance with paragraph 22.  The letter

contained a header proclaiming "CERTIFICATE OF MAILING."  As part of the same exhibit, Nationstar included a screenshot from Chase's electronic records indicating that the default letter was scanned into Chase's system on October 3, 2008.  The exhibit was admitted through the testimony of Jason George, a default case specialist employed by Nationstar.  Mr. George testified that he had previously worked for JPMorgan Chase and, prior to that, worked for Chase Home Finance before the two entities merged.  Mr. George testified he worked for Chase from July 2011 until March 2015.  He testified generally about his familiarity with Chase's practices and procedures for creating and maintaining records as well as his familiarity with the boarding process that occurs when one lender takes over the servicing of a loan from another lender.

Prior to the admission of the default letter, the Thorltons' counsel objected based on "hearsay, lack of foundation, and lack of personal knowledge."  Specifically, the Thorltons' counsel argued that Mr. George did not have personal knowledge of whether the letter was actually mailed out, regardless of whether it was mailed by Chase or by a third-party vendor.[1]  The Thorltons' counsel also argued that Mr. George was not qualified to lay a business records predicate for the admission of the document when the letter was mailed "by yet another department of the company that he apparently spoke to someone about."  The trial court overruled the objection and admitted the letter.

During questioning about the letter, Mr. George testified that the letter was part of Nationstar's business records that had previously been part of Chase's business records.  He testified that the records were made by employees with personal

---

[1]The Thorlton's counsel explained to the court that the use of a third-party vendor to mail out default letters was common in the mortgage industry.

knowledge of the information being entered at the time it was entered, that the records were kept in the course of Chase's regularly-conducted business activities, and that it was Chase's regular business practice to make and maintain such records. When asked how he knew that the letter was mailed to the Thorltons, Mr. George responded: "That was the routine practice back then for Chase Home Finance."

On cross-examination, Mr. George testified that he worked in multiple departments with Chase and Nationstar, including two days in Chase's breach letter department. Mr. George acknowledged that Chase used a third-party vendor to mail the breach letters and that he knew this because he worked with the third-party vendor during his training. Mr. George explained that the third-party vendor obtains a PDF copy of the breach letter from the lender, prints and mails it first class, and then sends a CD back to the lender informing the lender that the letter was mailed. Mr. George explained that the lender also receives proof of mailing via a copy of each letter with a "proof of mailing stamp from the post office." Mr. George subsequently admitted that he did not work for the third-party vendor at the time that the Thorltons' breach letter was mailed and that he never actually worked for the third-party vendor. He explained that his knowledge about the third-party vendor's mailing process came through his two-day assignment in Chase's breach letter department. He also explained that his knowledge about the third-party vendor's mailing process came entirely from other Chase employees who told him about the third-party vendor.

On appeal, the Thorltons challenged the sufficiency of the evidence regarding the mailing of the default letter. Specifically, the Thorltons argued that because Mr. George did not work for Chase at the time the letter was mailed, he could

not have personal knowledge of that issue and, as a result, Nationstar failed to prove it complied with the condition precedent set forth in paragraph 22 of the mortgage.

In response, Nationstar argued that Mr. George's testimony regarding Chase's routine business practices was sufficient to establish that the letter was mailed. Nationstar asserted that Mr. George was not required to have worked for Chase at the time the letter was mailed in order to establish his knowledge of Chase's routine business practices.

After all briefs had been filed in this case, this court issued Spencer v. Ditech Financial, LLC, 242 So. 3d 1189 (Fla. 2d DCA 2018). In Spencer, this court addressed the issue of what constitutes sufficient evidence to establish the mailing of a default letter when the testifying witness was not a current employee of and had never worked for the entity which drafted and mailed the letter. Id. At oral argument, the Thorltons noted the Spencer opinion and argued that it also served as a basis to reverse in this case because like the employee in Spencer, Mr. George did not work for the entity which mailed the letter. The Thorltons filed a notice of supplemental authority citing Spencer on the same day that oral argument occurred.

This court then issued an order directing the parties to address Spencer and its application to this case. The Thorltons' supplemental brief noted that their counsel had raised an objection to the sufficiency of Mr. George's knowledge of the mailing issue at trial, and the Thorltons argued that Spencer was directly on point and required a reversal here because Mr. George testified that his knowledge of the mailing of the letter was based merely on his training and the routine business practices of Chase. Thus, the Thorltons argued that because Mr. George had never worked for the

third-party vendor which actually mailed the letter and because his knowledge of the third-party vendor's mailing process had been obtained from other Chase employees, the evidence was insufficient to establish that the letter had been mailed.

In its supplemental brief, Nationstar argued that the Thorltons waived any challenge to Mr. George's testimony regarding routine business practices, arguing that the Thorltons only objected to the admission of the default letter as a business record. Nationstar also argued that this issue was not one related to the sufficiency of the evidence. Instead, Nationstar maintained that the issue was an evidentiary issue related to routine business practices under section 90.406, Florida Statutes (2016), or lack of personal knowledge under section 90.604. Nationstar distinguished Spencer by arguing that there, the testifying witness had never worked for the entity (prior servicer) which drafted the default letter, whereas, in this case, Mr. George had worked for Chase, the entity which drafted the default letter. Nationstar pointed to parts of Mr. George's testimony wherein he described working "at three different stations" in the breach letter department and observing how breach letters were submitted to the third-party vendor for mailing and then how Chase received proof of mailing from the third-party vendor. Thus Nationstar argued that Mr. George's testimony was sufficient under Spencer. Citing other cases, Nationstar also argued that testimony regarding routine business practices related to the drafting and mailing of default letters was sufficient to prove the letter was actually mailed.

**ANALYSIS**

Addressing first the issue of preservation, we reject Nationstar's attempt to frame this issue as one involving only evidentiary considerations related to the

admissibility of a business record. In its answer brief, Nationstar relied on Bank of America, N.A. v. Delgado, 166 So. 3d 857 (Fla. 3d DCA 2015), to argue that Mr. George was not required to be employed by Chase at the time the default letter was mailed in order to provide a foundation for the admission of Nationstar's business records. And in its supplemental answer brief, Nationstar argued that the issue in this case was not one related to the sufficiency of the evidence regarding the Thorltons' receipt of the default letter. However, Spencer holds otherwise. Indeed, in Spencer, we specifically rejected the appellants' reliance on Delgado, noting that it addressed the sufficiency of the evidence of an entity's boarding process to establish the admissibility of documents like default letters under the business records exception to the hearsay rule, whereas in Spencer, the issue was the sufficiency of the evidence demonstrating an entity's routine business practices to establish that a default letter was mailed. See Spencer, 242 So. 3d at 1191. We do not disagree with Nationstar's argument that "basic familiarity with [another entity's] practices for generating, storing, and sending a default [letter] in the normal course of business is all that is required to establish the admissibility of a default [letter] under the business records exception," but as in Spencer, the admissibility of the default letter is not at issue here. See id.

Further, the fact that the Thorltons did not raise the precise issue raised in Spencer below does not preclude them from raising the issue on appeal. As we noted in Wolkoff v. American Home Mortgage Servicing, Inc., 153 So. 3d 280, 282 (Fla. 2d DCA 2014), Florida Rule of Civil Procedure 1.530(e) permits parties to raise the issue of the sufficiency of the evidence on appeal even where they did not make such an objection below. While it is true that "[b]asic principles of due process suggest that

courts should not consider issues raised for the first time at oral argument," courts also acknowledge that there are "[r]are or unusual instances" where an appellate court may consider arguments raised for the first time on appeal. Powell v. State, 120 So. 3d 577, 591, 593 (Fla. 1st DCA 2013); see also Wolkoff, 153 So. 3d at 282 (recognizing that courts have ability to consider arguments raised for the first time at oral arguments in limited circumstances). This case presents one such circumstance, where a case which addresses an issue presented in this case was decided after all briefing had been completed in this case. Furthermore, we provided both parties with the opportunity to address the proof of mailing issue in supplemental briefs. Thus no due process violation has occurred and we may dispose of this issue on the merits.

Having analyzed the facts and holdings of both Spencer and a subsequently decided case, Soule v. U.S. Bank National Ass'n, 43 Fla. L. Weekly D1590 (Fla. 2d DCA July 13, 2018), we conclude that they do not require a reversal in this case. Rather, we hold that Mr. George's testimony was sufficient to establish that the default letter was mailed.

Spencer requires not only that a testifying witness "be employed by the entity drafting the letter," but also that the witness "have firsthand knowledge of the company's routine practice for mailing letters." Spencer, 242 So. 3d at 1191 (emphasis added). Prior to his employment with Nationstar, Mr. George was employed by Chase, which was the entity that drafted the default letter. Mr. George also had knowledge of Chase's routine practice of submitting the letters for mailing to a third-party vendor. He explained what those practices were at the time the subject default letter was mailed out even though he was not in Chase's employ at that time.

That point is where this case factually differs from <u>Spencer</u>. The issue in <u>Spencer</u> was that the testifying witness worked for a successor in interest to the mortgage company that initiated the foreclosure proceedings. The witness had never worked for the mortgage company which was the entity that had both drafted and mailed the letters. <u>Id.</u> at 1190-91. And while the witness testified about the mortgage company's policy and procedure for both drafting and mailing default letters, she had no personal knowledge of those issues. <u>Id.</u> at 1191.

Similarly, in <u>Soule</u>, the testifying witness worked for the successor in interest to the mortgage servicing company that had prepared and allegedly mailed the default letter. <u>Soule</u>, 43 Fla. L. Weekly D1590. The witness testified she had never worked for the original servicing company, and she admitted that she had never been trained in any of the prior servicing company's procedures. <u>Id.</u> Thus we concluded that the witness had no personal knowledge of whether the default letter was mailed or of the prior servicing company's policies and procedures for mailing. <u>Id.</u>

Here, in contrast, not only did Mr. George work for Chase, the entity which drafted the letter, but he also established his familiarity with Chase's routine practices relating to the mailing of the default letters at the time the subject default letter was mailed. We have previously held that "[t]he fact that a document is drafted is insufficient in itself to establish that it was mailed" and that additional evidence is required to establish proof of mailing. <u>Allen v. Wilmington Tr., N.A.</u>, 216 So. 3d 685, 687-88 (Fla. 2d DCA 2017). However, such evidence may be in the form of proof of regular business practices. <u>See id.</u> at 688. And we have concluded that such evidence "may be sufficient to establish a rebuttable presumption of mailing," where the witness has

- 9 -

"personal knowledge of the company's general practice in mailing letters." Id. (citing CitiMortgage, Inc. v. Hoskinson, 200 So. 3d 191, 192 (Fla. 5th DCA 2016)).

While we acknowledge that Chase was not the entity that ultimately mailed the letter, it had a routine practice for submitting default letters to a third-party vendor which then mailed the letter. As Mr. George explained, Chase would then receive proof of mailing back from the third-party vendor. We are persuaded by PNC Bank National Association v. Roberts, 246 So. 3d 482 (Fla. 5th DCA 2018), that Mr. George's testimony was sufficient then to create a rebuttable presumption of the mailing of the letter.

Roberts contains many factual similarities to this case. There, a bank employee testified about the routine business practices of the foreclosing bank which included testimony about the creation of default letters. Id. at 485-86. Specifically, the witness testified that the bank "creates the letter by ordering it from an outsourcing vendor . . . which prints the [default] letters, folds them, places them in a window envelope, seals the envelopes, affixes postage, and mails them by first-class mail." Id. at 486. She also testified that the third-party vendor then provided the bank with a report showing which letters were mailed. Id. The Fifth District Court of Appeal acknowledged that the dates on the default letters only established the date that they were drafted and not whether or when they were sent. Id. However, the court ultimately held that the witness's "personal knowledge" of the bank's and the third-party vendor's routine business practices and policies for default letters during the time period when the pertinent default letters were mailed, in conjunction with the admission of the default letters themselves, was sufficient to establish that the letters were mailed. Id.

As in <u>Roberts</u>, the foreclosing bank here, Chase, was not the entity that actually mailed the letter. Additionally, like the foreclosing bank in <u>Roberts</u>, Chase had routine practices for drafting the default letters, submitting them to a third-party vendor for mailing, and then receiving confirmation of mailing back from the vendor. The fact that Mr. George was not employed by Chase at the time the subject default letter was mailed is not dispositive because Mr. George was able to testify not only about his own training and experience with Chase regarding default letters, but also about Chase's policies and procedures relating to the mailing of default letters at the time the subject default letter was mailed. Just as the Fifth District concluded in <u>Roberts</u>, we likewise conclude that where a testifying witness establishes his or her personal knowledge of a foreclosing entity's and third-party vendor's routine business practices and policies for drafting and mailing a default letter, coupled with the admission of the default letter itself, there is competent, substantial evidence that the subject default letter was mailed. <u>Id.</u>

Because Nationstar sufficiently established that its predecessor in interest (Chase) satisfied the condition precedent of providing the paragraph 22 notice, we affirm.

Affirmed.

NORTHCUTT, J., Concurs.
LUCAS, JJ., Concurs in result only.