IN THE SECOND DISTRICT COURT OF APPEAL, LAKELAND, FLORIDA

February 27, 2019

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

MARLYN TRACEY,                        )
                                      )
        Appellant,                    )
                                      )
v.                                    )        Case No. 2D16-5091
                                      )
WELLS FARGO BANK, N.A., as Trustee    )
for the Certificateholders of Banc of )
America Mortgage Securities, Inc., 2007-2 )
Trust, Mortgage Pass-Through          )
Certificates, Series 2007-2,          )
                                      )
        Appellee.                     )
_____ )

BY ORDER OF THE COURT.

        Appellant, Marlyn Tracey, has filed an Amended Motion for Rehearing and

Rehearing En Banc Regarding the Remedy Imposed Upon Remand.  We grant the

amended motion for rehearing but deny the amended motion for rehearing en banc. The

prior opinion dated March 23, 2018, is accordingly withdrawn, and the attached opinion

is issued in its place.  No further motions for rehearing will be entertained.

I HEREBY CERTIFY THE FOREGOING IS A
TRUE COPY OF THE ORIGINAL COURT ORDER.


MARY ELIZABETH KUENZEL, CLERK

MARLYN TRACEY, )
)
Appellant, )
)
v. ) Case No. 2D16-5091
)
WELLS FARGO BANK, N.A., as Trustee )
for the Certificateholders of Banc of )
America Mortgage Securities, Inc., 2007-2 )
Trust, Mortgage Pass-Through )
Certificates, Series 2007-2, )
)
Appellee. )
_____ )

Opinion filed February 27, 2019

Appeal from the Circuit Court for Pinellas
County; Karl B. Grube, Senior Judge.

Mark P. Stopa of Stopa Law Firm, Tampa
(withdrew after briefing) and Leslie M.
Conklin, Clearwater, for Appellant.

Nancy M. Wallace of Akerman LLP,
Tallahassee; William P. Heller of Akerman
LLP, Fort Lauderdale; Celia C. Falzone of
Akerman LLP, Jacksonville, and David A.
Karp of Akerman LLP, Tampa, for Appellee.

LUCAS, Judge.

Marlyn Tracey appeals a final judgment foreclosing Wells Fargo Bank,

N.A.'s mortgage on her home. Ms. Tracey raises two issues on appeal. Finding merit

in her first argument, we need not consider the second. The circuit court reversibly

erred when it permitted Wells Fargo to amend its complaint during trial to conform to the evidence it presented of two unpled modification agreements.

I.

The underlying litigation began on June 9, 2011, when Wells Fargo filed a complaint seeking to foreclose upon a mortgage on Ms. Tracey's property. The original complaint included as exhibits Ms. Tracey's promissory note, mortgage, and two loan modification agreements, dated May 8, 2009, and July 17, 2009, respectively. As originally filed, Wells Fargo's complaint specifically alleged that Ms. Tracey's breach of the modification agreements predicated its claim for relief.

Following an involuntary dismissal of that pleading, Wells Fargo changed tack with respect to its theory of recovery. On September 5, 2012, it filed an amended complaint, what would become the operative pleading for the remainder of this case, in which no mention was made of the previously asserted and attached modification agreements. For her part, Ms. Tracey's answer and affirmative defenses to the amended complaint did not raise either of these modification agreements as an avoidance to any part of Wells Fargo's claim. So, seemingly, whatever importance these modification agreements may have had—either as a basis for Wells Fargo's recovery or as an avoidance to it—was abandoned as an issue for adjudication. The case then progressed in a not unordinary course for a residential mortgage foreclosure proceeding.

When the case went to trial four years later, Wells Fargo changed course yet one more time, reverting back to the modification agreements as a basis for its cause of action. Over objection, Wells Fargo admitted both modification agreements

-2-

into evidence and called two witnesses who explained the succession of the note, Ms. Tracey's payment history, and that the balance was due and owing based upon the note and modification agreements. Wells Fargo's counsel argued that the omission of the modification agreements from the amended complaint was a "mistake or inadvertence" but that, in all events, their inclusion as part of its claim for relief visited no prejudice on Ms. Tracey because she signed the agreements and they were attached to a pleading—albeit the original, abandoned complaint. Ms. Tracey maintained that she was prejudiced by the change in Wells Fargo's theory of the case because she was unable to prepare her defense for an issue she had thought was abandoned four years earlier. Indeed, she testified that she was under the impression that the loan modification agreements Wells Fargo introduced had never progressed beyond proposals: she received only blank envelopes from Wells Fargo regarding the agreements, and when she attempted to inquire about their status by telephone was directed to a call center in Bangladesh. Nevertheless, the circuit court granted Wells Fargo's motion and, following the conclusion of the trial, entered the final judgment of foreclosure—premised on the mortgage, promissory note, and both loan modification agreements—that we now have before us.

A circuit court's decision to amend the pleadings to conform to the evidence under Florida Rule of Civil Procedure 1.190(b) is one we review for abuse of discretion. Turna v. Advanced Med-Servs., Inc., 842 So. 2d 1075, 1076 (Fla. 2d DCA 2003). Our review here requires us to examine a particular aspect of rule 1.190(b):

> **Amendments to Conform with the Evidence.** When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such

amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment, but failure so to amend shall not affect the result of the trial of these issues. If the evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended to conform with the evidence and shall do so freely when the merits of the cause are more effectually presented thereby and *the objecting party fails to satisfy the court that the admission of such evidence will prejudice the objecting party* in maintaining an action or defense upon the merits.

(Emphasis added.)

Without question, Ms. Tracey objected to Wells Fargo's reassertion of the loan modification agreements as a basis for its recovery at trial. She did not try Wells Fargo's claim on two modification agreements by express or implied consent. The question before us, then, is whether the circuit court's finding that she was not prejudiced by the late amendment amounted to an abuse of discretion. Under these facts, we hold that it was.

Few courts have attempted to lay hold of the precise measure of "prejudice" that rule 1.190(b) contemplates when a party objects to a motion to amend a pleading to conform to the evidence.[1] Cf. Smith v. Mogelvang, 432 So. 2d 119, 123 (Fla. 2d DCA 1983) ("There is a limit, which cannot be precisely delineated . . . beyond which parties may not depart from their pleadings."). But a few guiding principles can

_____

[1]At the same time, several courts have observed that the issue of prejudice is "the crucial consideration" on a motion to amend to conform to the evidence. See Horacio O. Ferrea N. Am. Div., Inc. v. Moroso Performance Prods., Inc., 553 So. 2d 336, 337 (Fla. 4th DCA 1989) (citing New River Yachting Ctr. v. Bacchiocchi, 407 So. 2d 607, 609 (Fla. 4th DCA 1981); Lasar Mfg. Co. v. Bachanov, 436 So. 2d 236 (Fla. 3d DCA 1983); Fla. R. Civ. P. 1.190(b)).

be discerned. First and foremost, a court must be mindful of the larger purpose that pretrial pleadings fulfill in civil litigation—pleadings function as a safeguard of due process by ensuring that the parties will have prior, meaningful notice of the claims, defenses, rights, and obligations that will be at issue when they come before a court. See Pro-Art Dental Lab, Inc. v. V-Strategic Grp., LLC, 986 So. 2d 1244, 1252 (Fla. 2008) (" 'Florida law clearly holds that a trial court lacks jurisdiction to hear and to determine matters which are not the subject of proper pleading and notice,' and '[t]o allow a court to rule on a matter without proper pleadings and notice is violative of a party's due process rights.' " (alteration in original) (emphasis omitted) (quoting Carroll & Assocs., P.A. v. Galindo, 864 So. 2d 24, 28-29 (Fla. 3d DCA 2003))); Hart Props., Inc. v. Slack, 159 So. 2d 236, 239 (Fla. 1963) ("[I]ssues in a cause are made solely by the pleadings . . . . [The purpose of pleadings] is to present, define and narrow the issues, and to form the foundation of, and to limit, the proof to be submitted on the trial."); Land Dev. Servs., Inc. v. Gulf View Townhomes, LLC, 75 So. 3d 865, 871 (Fla. 2d DCA 2011) ("Due process protections prevent a trial court from deciding matters not noticed for hearing and not the subject of appropriate pleadings." (quoting Mizrahi v. Mizrahi, 867 So. 2d 1211, 1213 (Fla. 3d DCA 2004))); Rankin v. Rankin, 258 So. 2d 489, 491 (Fla. 2d DCA 1972) ("We simply say that the pleadings must be such as to afford both parties due process."). It must also be remembered that rule 1.190(b), like all the rules of civil procedure, aims "to prevent the use of surprise, trickery, bluff and legal gymnastics." Surf Drugs, Inc. v. Vermette, 236 So. 2d 108, 111 (Fla. 1970); see also Massey-Ferguson, Inc. v. Santa Rosa Tractor Co., 366 So. 2d 90, 93 (Fla. 1st DCA 1979) ("The

trial judge aptly stated: 'The purpose of pleadings is to make issues.  The purpose of issues is for people to know what they've got to meet and get ready to meet it.' ").[2]

Prejudice, then, under rule 1.190(b), appears to turn on whether a litigant's right to notice of what to prepare for at trial has been infringed.  See, e.g., GGB Profit Sharing P'ship v. Goldberg, 166 So. 3d 847, 849 (Fla. 2d DCA 2015) (holding it was error to allow amendment to complaint to conform to the evidence so that plaintiff could change his theory of recovery from restitution to one based on his status as a beneficiary of a trust; "[b]ecause paragraph 6 [of the complaint] was not adequate to put GGB on notice of Goldberg's alternative theory, it was error for the trial court to consider it"); Bachman v. McLinn, 65 So. 3d 71, 74 (Fla. 2d DCA 2011) (concluding that the trial court erred in allowing the father to amend pleadings to conform to evidence at trial over the mother's objections because it "deprived the [m]other of the opportunity to prepare for the case that [the father] actually presented rather than for the one he pleaded, which was what she was expecting to defend"); Buday v. Ayer, 754 So. 2d 771, 772 (Fla. 2d DCA 2000) (reversing amendment of counterclaim to conform to the evidence where the original counterclaim sought specific performance and declaratory relief in a

_____

[2]With those principles in mind, some of the prior pronouncements from our court concerning motions to amend to conform to the evidence (which seem almost categorical in their tenor) become all the more clarion.  See, e.g., Palm v. Taylor, 929 So. 2d 566, 568 (Fla. 2d DCA 2006) ("Amending a complaint during trial to assert a new cause of action generally should not be permitted over objection."); Freshwater v. Vetter, 511 So. 2d 1114, 1115 (Fla. 2d DCA 1987) ("[A]mending [to conform to the evidence] to state a new cause of action should not be allowed over objection." (citing Triax, Inc. v. City of Treasure Island, 208 So. 2d 669 (Fla. 2d DCA 1968); Tucker v. Daugherty, 122 So. 2d 230 (Fla. 2d DCA 1960))); see also Simon, Pipes & Ross, Inc. v. Cuartas, 834 So. 2d 870, 872 (Fla. 3d DCA 2002) ("Where an objection is raised by the defendant, it is reversible error to permit a plaintiff to amend at the close of evidence to allege a new theory of recovery." (citing Designers Tile Int'l Corp. v. Capitol C Corp., 499 So. 2d 4 (Fla. 3d DCA 1986))).

-6-

real property dispute but the counterclaimant pursued a claim for money damages at trial; "[n]othing in this case indicates that Ms. Buday was on notice that Mr. Ayer sought monetary damages; she had no reason to anticipate such a claim before the trial's commencement"); Dean Co. v. U.S. Home Corp., Inc., 485 So. 2d 438, 439 (Fla. 2d DCA 1986) (concluding that it was "obvious[] . . . error" for the trial court to permit a third-party plaintiff to amend its complaint for indemnification to include a claim for contribution at the conclusion of trial because "[the third-party defendant] Dean entered the trial of the third[-]party claim knowing . . . that Dean had only to defend against U.S. Home's attempt to thrust upon it the entire responsibility for the roof's failure. . . . Dean's counsel had no reason to develop evidence during the trial of the third[-]party action that would have shed light on the percentage, if any, of the damages sustained by the Association to be borne by Dean"); Fed. Home Loan Mortg. Corp. v. Beekman, 174 So. 3d 472, 476 (Fla. 4th DCA 2015) (reversing entry of order granting a loan modification where note holder "was denied an opportunity to defend against the issue of loan modification and could have offered additional evidence had the issue been pled"); Kind v. Gittman, 889 So. 2d 87, 91 (Fla. 4th DCA 2004) (affirming trial court's refusal to permit a "[midtrial] amendment to introduce a new and different cause of action for breach of contract . . . [that] would have required additional discovery and possibly additional witnesses").

Viewed in the light of these holdings, Ms. Tracey clearly suffered prejudice when the circuit court permitted the amendment of Wells Fargo's complaint to conform to the evidence over her objection. Two contracts that she believed had never been formed (and that Wells Fargo had abandoned as a basis of recovery when it filed its

amended complaint) became a featured point of Wells Fargo's foreclosure cause of action against her.  Cf. Rattigan v. Cent. Mortg. Co., 199 So. 3d 966, 967 (Fla. 4th DCA 2016) (reversing a final foreclosure judgment when "[t]he Bank was clearly proceeding under the modified note, i.e., a different note").  Ms. Tracey would have had no reason to prepare any kind of defense to these unpled modification agreements and, in fact, would have reasonably assumed that they would not be a feature in the trial at all.  See Raymond, James & Assocs. v. Zumstorchen Inv., Ltd., 488 So. 2d 843, 844 (Fla. 2d DCA 1986) ("[I]n filing [an amended] complaint, the pleader causes the new complaint to become a substitute for the prior pleading."); Eigen v. Fed. Deposit Ins. Corp., 492 So. 2d 826, 827 (Fla. 2d DCA 1986) ("Normally, an original pleading is superseded where an amended pleading does not express an intention to save any portion of it."). Yet, the breach of the modification agreements became an integral part of the basis of Wells Fargo's theory of recovery as well as the final judgment the circuit court ultimately entered.  Under these facts, allowing Wells Fargo to amend its complaint at trial was an abuse of discretion, and so we must reverse the court's final judgment.

II.

Having reversed the judgment of foreclosure, the question arises as to what is the appropriate scope of remand.  It is an issue that is becoming more and more frequently disputed in appeals concerning residential mortgage foreclosure cases. Indeed, it is the sole issue that precipitated a rehearing motion from the prevailing appellant here.  We endeavor to resolve it below.

A.

In her rehearing motion, Ms. Tracey observes that our court has in recent years issued varying remand instructions within our residential foreclosure opinions—sometimes we will order a new trial; sometimes we may direct the lower court to enter a judgment; still other times, we will remand for the entry of an involuntary dismissal.[3]  It is an accurate observation.[4]  Even with the discrete issue before us here, a pleading

[3]Compare Spencer v. Ditech Fin., LLC, 242 So. 3d 1189 (Fla. 2d DCA 2018) (reversing and remanding for an involuntary dismissal where plaintiff's evidence was insufficient to demonstrate that borrowers had been sent a notice of default letter); and Knight v. GTE Fed. Credit Union, 43 Fla. L. Weekly D348, D350 (Fla. 2d DCA Feb. 14, 2018) (reversing and remanding for dismissal where trial court erroneously permitted plaintiff to introduce hearsay evidence of a default letter's mailing, without which there was insufficient evidence demonstrating that plaintiff had mailed a notice of acceleration letter to defendants); and Mathis v. Nationstar Mortg., LLC, 227 So. 3d 189, 193 (Fla. 2d DCA 2017) (reversing and remanding for an involuntary dismissal where evidence was insufficient to establish plaintiff's standing to enforce note); and Allen v. Wilmington Trust, N.A., 216 So. 3d 685, 688 (Fla. 2d DCA 2017) (reversing and remanding for an involuntary dismissal where plaintiff failed to "meet its burden of proving it satisfied the condition precedent of giving notice of acceleration"); and Edmonds v. U.S. Bank Nat'l Ass'n, 215 So. 3d 628, 631 (Fla. 2d DCA 2017) (reversing and remanding for an involuntary dismissal where plaintiff failed "to prove that the default letters were mailed or actually delivered and that the notice under paragraph 22 was given"); with McCampbell v. Fed. Nat'l Mortg. Ass'n, 43 Fla. L. Weekly D1214, D1214 (Fla. 2d DCA May 30, 2018) (reversing and remanding for a new trial where trial court erroneously admitted copies of a loan modification agreement in violation of the best evidence rule); and Heller v. Bank of Am., NA, 209 So. 3d 641, 645 (Fla. 2d DCA 2017) (reversing and remanding for a new trial where "trial court improperly admitted the copy of the note over objection" in violation of the best evidence rule); and Sas v. Fed. Nat'l Mortg. Ass'n, 112 So. 3d 778, 779-80 (Fla. 2d DCA 2013) (reversing and remanding for further proceedings "to properly establish the amounts allegedly due and owing" where trial court improperly permitted plaintiff to prove amount of debt through testimony about its business records "without having first admitted those business records").

[4]It may even be an understatement since one can find varying remand directions in other kinds of civil cases not involving residential mortgage foreclosures. See, e.g., Colson v. State Farm Bank, F.S.B., 183 So. 3d 1038, 1040 (Fla. 2d DCA 2015) (recognizing "the general rule that 'when the record on appeal is devoid of competent substantial evidence to support the attorney's fee award, the appellate court

issue, we find varying and conflicting decisions about what constitutes an appropriate remand.  Compare Beekman, 174 So. 3d at 477 (reversing judgment of foreclosure premised on an unpled modification agreement and remanding for new trial), and Brumlik v. Palmer, 407 So. 2d 1058, 1059 (Fla. 5th DCA 1981) ("Because neither the pleadings, amendments nor proof support the relief granted, we reverse and remand for repleading and retrial."), with Buday, 754 So. 2d at 773 (reversing final judgment on counterclaim that was improperly amended at trial to pursue additional damages and remanding to strike that portion of the award from the judgment), and Freshwater v. Vetter, 511 So. 2d 1114, 1115 (Fla. 2d DCA 1987) ("We think the trial judge abused his discretion in this case by allowing Freshwater to amend his pleadings to state a cause of action against Vetter individually on a fraud theory after the close of Freshwater's case. . . .  Accordingly, we vacate the judgment entered against Vetter individually . . .

_____

will reverse the award without remand for additional evidentiary findings' " but explaining that "where the record includes some evidence supporting the fee and cost award, this court *may* remand for further proceedings" (emphasis added) (quoting Diwakar v. Montecito Palm Beach Condo. Ass'n, 143 So. 3d 958, 961 (Fla. 4th DCA 2014))); Alvarez v. Rendon, 953 So. 2d 702, 710-11 (Fla. 5th DCA 2007) (comparing jury trial cases in which appellate courts ordered a new trial on remand with cases correcting the verdict, explaining that "whether the proper remedy is a new trial or entry of judgment in one party's favor depends on whether the intent of the jury can be properly determined from the verdict form").  Compare City of Delray Beach v. DeSisto, 197 So. 3d 1206, 1210 (Fla. 4th DCA 2016) (reversing and remanding with instructions for trial court to enter a remittitur order consistent with other " 'garden variety' cases where the plaintiff generally testified that it experienced stress without medical or psychological evidence of emotional pain and suffering" (quoting City of Hollywood v. Hogan, 986 So. 2d 634, 650 (Fla. 4th DCA 2008))); with Truelove v. Blount, 954 So. 2d 1284, 1289-90 (Fla. 2d DCA 2007) (reversing order denying motion for remittitur and remanding "for further proceedings on the issue of future damages"); and Montesinos v. Zapata, 43 So. 3d 97, 99-100 (Fla. 3d DCA 2010) (reversing trial court's order denying defendants' "motion for remittitur where the evidence presented at trial was insufficient to permit the jury to award future medical expenses" and remanding "for a new trial on the issue of future medical expenses" but alternatively permitting the trial court to "order a remittitur as to the amount of future medical expenses").

[and] direct the trial court to enter an amended judgment consistent with this opinion."), and Dean, 485 So. 2d at 440 (reversing judgment premised on motion to amend to conform to the evidence and directing trial court to enter judgment in favor of third-party defendant), and Robbins v. Newhall, 692 So. 2d 947, 950 (Fla. 3d DCA 1997) (reversing and remanding for entry of judgment in favor of appellant; "Newhall prevailed at trial on an unpled claim, over Dr. Robbins' timely objection.  There must be a directed verdict for Dr. Robbins on this claim.").  Cases may turn on different substantive issues, but why or whether a particular issue merits a different kind of remand direction is a point our appellate decisions seldom elucidate.

In truth, it is rare for an appellate opinion to offer a comprehensive justification for its scope of remand.  Yet, remand is a vitally important component of any appellate decision, particularly for the litigants who, depending on a decision's remand instruction, may either find themselves completely vindicated in their civil dispute or forced to retry its merits all over again.  Beyond the individual parties, conflicting remand instructions could present inconsistent, even misleading, signals to litigants in other civil cases about what remedy they may anticipate from an appellate court's review.  Our colleague, Judge Salario, recently wrote about the potential jurisprudential repercussions of disparate remand directions:

> My point, however, is that we are making decisions about
> when a foreclosure plaintiff gets an involuntary dismissal or a
> new trial based on considerations that do not bear an
> obvious relationship to the rule governing the consequences
> of a party's failure to meet its burden of proof that we apply
> in cases other than foreclosures and that we may not be
> able to limit to the foreclosure context on a principled basis.
> Someday, for instance, a lawyer is going to ask that we
> apply the some-evidence-no-evidence rule in a garden
> variety contract or tort case, a result we may well consider

unadvisable. At least on the basis of what our opinions say, "that is a foreclosure rule" may be the only answer we are able to give for not extending it. But that answer is not going to be a credible or persuasive one.

Spencer v. Ditech Fin., LLC, 242 So. 3d 1189, 1195 (Fla. 2d DCA 2018) (Salario, J., concurring). It is, in short, a problem that merits attention.

B.

There is actually a statute that touches on the scope of appellate remand, one that has been in the books for more than a century, see ch. 6467, § 1, Laws of Fla. (1913), though it seldom gets mentioned any more. Section 59.35, Florida Statutes (2018), provides in pertinent part:

> An appellate court may, in reversing a judgment of a lower court brought before it for review by appeal, by the order of reversal, if the error for which reversal is sought is such as to require a new trial, direct that a new trial be had on all the issues shown by the record or upon a part of such issues only.

This statute, the Florida Supreme Court held, "is not mandatory, it is directory." Webb Furniture Co. v. Everett, 141 So. 115, 116 (Fla. 1932) (addressing prior version of statute). In other words, it connotes a permissive direction an appellate court "may" utilize when reversing a judgment of a lower court. See, e.g., The Fla. Bar v. Trazenfeld, 833 So. 2d 734, 738 (Fla. 2002) ("The word 'may' when given its ordinary meaning denotes a permissive term . . . ."); Estate of Johnson ex rel. Johnson v. Badger Acquisition of Tampa, LLC, 983 So. 2d 1175, 1181 n.3 (Fla. 2d DCA 2008) ("When interpreting a statute . . . 'may' suggests a permissive term.").

-12-

This statute also reflects what has long been tacitly recognized in Florida law. That is, an appellate court's direction on remand reflects some exercise of discretion on the part of the appellate panel deciding the particular appeal.

What drives that discretionary decision? The potential considerations may be myriad, but when the question arises, the appellate courts' decisions on the scope of remand universally harken to basic principles of equity and fairness fashioned to the particular facts and circumstances of the case. Although Florida courts have not often expounded on this point, it is abundantly clear that that is what our courts are doing when they fashion a remand in many civil appeals. See, e.g., Nelson v. Unemployment Appeals Comm'n, 880 So. 2d 1232, 1233 (Fla. 2d DCA 2004) ("[A]pplying considerations of fairness and due process, we reverse and remand to permit [Appellant] to appeal the order of repayment and to raise the merits of his eligibility for unemployment benefits as a defense to repayment."); Castillo v. Dep't of Admin., Div. of Ret., 593 So. 2d 1116, 1117 (Fla. 2d DCA 1992) (holding that "equity requires us to remand for a factfinding proceeding to allow the agency to review the affidavits and consider appellant's arguments" concerning the dismissal of an administrative petition); Edelsburg v. Tzynder, 230 So. 3d 1255, 1256 (Fla. 3d DCA 2017) (quashing order holding appellant in criminal contempt; "[w]e also find that in the interests of pursuing fairness, further proceedings in this case should be held before a different trial judge"); Bank of N.Y. Mellon ex rel. Registered Holders of Alt. Loan Trust 2007-OA7 v. Heath, 219 So. 3d 104, 106 n.1 (Fla. 4th DCA 2017) (reversing involuntary dismissal of foreclosure action but noting that the trial court did not abuse its discretion when it excluded a pooling and servicing agreement from evidence where the servicer's

-13-

attorney stated during a deposition that he would not rely on the agreement at trial; "It does not comport with fundamental fairness for an attorney to mislead an opponent, even unintentionally, and then reap the benefits. Therefore, on remand, Borrower shall have the right to conduct another deposition of the SPS representative and question the representative about the PSA"); Escutia v. Greenleaf Prods., Inc., 886 So. 2d 1059, 1062 (Fla. 1st DCA 2004) (reversing and remanding "[t]o maintain procedural fairness" where claimant "was trapped by [a] 'Gotcha!' tactic"); Asam v. Fla. Unemployment Appeals Comm'n, 871 So. 2d 978, 981 (Fla. 3d DCA 2004) (holding that under "considerations of fairness and due process" a litigant would be permitted to challenge an otherwise untimely appealed ruling from the Florida Unemployment Appeals Commission; "because the overpayment determination is so inextricably intertwined with the initial decision denying benefits, we hold that the claimant is free to raise any and all factual defenses to the underlying decision to contest the overpayment determination. In other words, on the facts of this case, and while it may seem anomalous, it is nevertheless legally permissible on remand to find that the first appeals referee erred in reversing the initial eligibility determination, and thereby reverse the overpayment determination, but at the same time not overturn the underlying decision because that decision was not timely appealed"); Enter. Leasing Co. v. City of Lauderdale Lakes, 637 So. 2d 24 (Fla. 4th DCA 1994) (reversing final judgment quieting title to a roadway in favor of a private owner but remanding for a new trial where there was no competent evidence on whether the roadway was included within a recorded declaration; "[b]ecause the issue was fairly raised in the pleadings and its determination necessary to completely resolve the dispute between the parties in this action, we

-14-

remand to the trial court for further proceedings so that additional evidence may be taken"); Hartnett v. Dep't of Ins., 406 So. 2d 1180, 1184 (Fla. 1st DCA 1981) ("Because of our conclusion that the hearing officer's recommendation of disciplinary action was based upon an erroneous interpretation of the statutes, and because the hearing officer failed to rule on the applicability of [s]ection 626.611(7), we think fairness dictates that upon remand the hearing officer be directed to submit an amended order in . . . light of this opinion before the Department further reviews and acts upon the charges against [the] appellant."); Ragen v. Paramount Hudson, Inc., 434 So. 2d 907, 908 (Fla. 3d DCA 1983) ("When, as here, it is likely that a correctable injustice has been done, we will not hesitate to order that a new trial be conducted based on all the available evidence."); English v. Clark, 289 So. 2d 33, 35-36 (Fla. 1st DCA 1974) ("[I]t is our opinion that equity and justice would best be served by reversing the judgment below, as supplemented, and remanding this cause for the further taking of testimony on the issues mentioned in this opinion.").[5] Remand directions, then, to the extent they are

_____

[5]With these principles in mind, the seemingly incongruent remand directions we have provided in some of our residential mortgage foreclosure decisions may be harmonized in a way that could alleviate some of the concerns Judge Salario raised in his concurrence in Spencer. Thus, we did not purport to lay down a definitive, legal rule binding in all future cases that "some evidence" or "no evidence" is the sole, determinative factor for the scope of remand where evidence of some element of a plaintiff's claim is lacking. See Wolkoff v. Am. Home Mortg. Servicing, Inc., 153 So. 3d 280, 283 (Fla. 2d DCA 2014) (holding that because plaintiff failed to submit any evidence supporting the amount of indebtedness "reversal for entry of an order of dismissal is warranted"); Paeth v. U.S. Bank Nat'l Ass'n for C-Bass Mortg. Loan Asset Backed Certificates, 220 So. 3d 1273, 1275 (Fla. 2d DCA 2017) (holding that because "the Bank offered some evidence, albeit insufficient, to prove the amount of indebtedness . . . the Bank is entitled to further proceedings on remand to determine the amount of the indebtedness"). Rather, what these case opinions provided were the respective panels' observations that drove the particular remand directions in those particular cases, consistent with how Florida appellate courts have historically fashioned remand in civil cases.

explained, seem always to turn upon some basic postulate of fairness, which is, in turn, an exercise of a court's discretion.

That discretion is by no means boundless. Far from it. In civil appeals concerning the sufficiency of the evidence of a claim or defense at trial, there is a long-standing aversion to remanding the case for more proceedings following a reversal. The First District explained this well in the context of an appeal over the sufficiency of medical bills in a worker's compensation case:

> We are now required to determine the appropriate disposition regarding the remaining indefinite medical bills/expenses which were awarded by the JCC.
>
> . . . .
>
> In other areas of the law, appellate courts do not generally provide parties with an opportunity to retry their case upon a failure of proof. See Katz v. Van Der Noord, 546 So. 2d 1047, 1048 (Fla. 1989) ("Having failed to introduce competent, substantial evidence in regard to this issue [relating to damages for out-of-pocket expenses], the buyer is not entitled to a second bite at the apple.") (citations omitted); see also Morgan Stanley & Co. v. Coleman (Parent) Holdings Inc., 955 So. 2d 1124, 1131 (Fla. 4th DCA 2007) (reversing $1.58 billion verdict where plaintiff failed to utilize correct methods in proving measure of damages); Evans v. Delro Indus., Inc., 509 So. 2d 1262, 1264 (Fla. 1st DCA 1987) ("When a cause is reversed for lack of evidence, a new trial cannot be awarded on the theory that some additional evidence *might have been available* at the former trial and will be presented on retrial, or that some such evidence *may be found* and will be presented on retrial, and that in either event there may be a different result upon retrial.") (citations omitted); Ryan v. Wren, 413 So. 2d 1223, 1224 (Fla. 2d DCA 1982) (affirming in part, but reversing award of punitive damages where record did not support award). We see no reason to treat workers' compensation cases differently. This court has consistently stated the law's preference for finality and its proscription against piecemeal litigation. See, e.g., Boynton Landscape v. Dickinson, 752 So. 2d 1236, 1238 (Fla. 1st DCA 2000) (stating in workers'

> compensation proceedings, piecemeal litigation of mature claims is no more permissible than in civil litigation). The primary function of this court is to correct errors committed by the lower tribunal, [Fla. Dep't of Corr.] v. Bradley, 510 So. 2d 1122, 1124 (Fla. 1st DCA 1987), not to serve as a conduit for unnecessarily protracted, piecemeal litigation.
>
> Today we write to clarify that, in future cases, where the party with the burden of proof fails to establish an evidentiary basis for the damages awarded at trial, the general rule applies and (absent an exceptional legal or factual basis warranting a contrary result) simple reversal is warranted. See Katz, 546 So. 2d at 1048; see also Evans, 509 So. 2d at 1264 (explaining reversal and remand for new trial should be granted only where exceptional circumstances warrant such disposition). We see no legitimate reason to give a party an "extra bite of the apple" or an "extra inning" after the game has concluded and it has failed to score a sufficient number of runs.

Morton's of Chicago, Inc. v. Lira, 48 So. 3d 76, 79-80 (Fla. 1st DCA 2010).

Interestingly, however, the Morton's court went on to "reluctantly remand" for further proceedings due to the "lack of clarity" in the court's prior decisions on the evidentiary issue before it. Id. at 80. The court concluded that "*fairness dictates* this case be remanded for further proceedings as to the medical expenses." Id. (emphasis added). Fairness, then, was the driving force behind that court's decision to remand for further proceedings.

In our view, Morton's offers an accurate and eminently serviceable approach to fashioning the scope of remand in many civil appeals that turn on the sufficiency of the evidence or pleadings in a trial. The "preference for finality," id., is very strong, reflecting the prominence that finality has always held in our system of law. See also Fla. Power Corp. v. Garcia, 780 So. 2d 34, 44 (Fla. 2001) ("The doctrine of decisional finality provides that there must be a 'terminal point in every proceeding both

-17-

administrative and judicial, at which the parties and the public may rely on a decision as being final and dispositive of the rights and issues involved therein.' " (quoting Austin Tupler Trucking, Inc. v. Hawkins, 377 So. 2d 679, 681 (Fla. 1979))); Haines City Cmty. Dev. v. Heggs, 658 So. 2d 523, 526 n.4 (Fla. 1995) ("There are societal interests in ending litigation within a reasonable length of time . . . ."); Spencer, 242 So. 3d at 1192 (Salario, J., concurring) ("The interests of the parties and the judicial system in finality and in avoiding drawn-out, expensive, piecemeal litigation require that the parties and the courts regard the trial as the brass ring and not as the first step of an odyssey to an eventual result many proceedings away."). For civil appeals, especially those proceeding from a trial, the need for a conclusion to a civil controversy will often militate against protracted, open-ended proceedings on remand.[6] Lawyers and litigants who proceed to trial under ill-considered pleadings or without adequate, admissible evidence to prove their cases do so at their own peril. But, on occasion, there may be exceptional circumstances that, in fairness, merit a return to the trial court for further adjudication following an appellate court's decision.

Ms. Tracey does not believe that remand directions grounded on principles of fairness and equity can be "enforced with any consistency." In her rehearing motion, she argues that premising remand on the fairness or equities of a

---

[6]Of course, in some cases, the scope of remand will be dictated by the substantive relief sought on appeal, as, for example, when a party seeks review of a trial court's denial of a motion for new trial or a motion for mistrial. Similarly, if a party is deprived of an opportunity to submit evidence because of a trial court's ruling (as opposed to having evidence erroneously admitted), a remand for a new trial may be the correct remedy. See Dep't of Revenue v. M.J.M, 217 So. 3d 1148, 1157 n.3 (Fla 2d DCA 2017); cf. infra n.8 (distinguishing cases on remand where the trial court had prohibited a party from presenting evidence).

particular case could raise "legitimate concerns about the disparate treatment of foreclosure cases as compared to other areas of law."[7]  We disagree.

First and foremost, as we have explained, remand directions based upon what is deemed just and equitable have long been the law in Florida.  This is nothing new.  It is a discretionary determination that has been applied many times and in many different kinds of civil appeals.  And there is already guidance within Florida law about how that discretion ought to be exercised in appeals concerning the sufficiency of the evidence at trial.  See Creadon v. U.S. Bank N.A., 166 So. 3d 952, 954 (Fla. 2d DCA 2015) ("U.S. Bank failed to present sufficient evidence that it had standing to foreclose the note.  As we stated in Correa v. U.S. Bank, N.A., 118 So. 3d 952, 956 (Fla. 2d DCA 2013), we do not generally give parties who have failed to prove their case an opportunity to do so in a retrial.  Thus, we reverse and remand with directions that the circuit court enter an involuntary dismissal of the foreclosure complaint."); Carlough v. Nationwide Mut. Fire Ins. Co., 609 So. 2d 770, 771-72 (Fla. 2d DCA 1992) ("Under the

_____

[7]Although it would not seem to be applicable to her appeal, Ms. Tracey posits a rule of remand for evidentiary errors premised on the question of whether the foreclosing lender would have prevailed at trial but for the erroneous evidentiary ruling.  "If the answer is 'no,' then a remand for an involuntary dismissal is proper.  Where the answer is 'yes,' then a remand for new trial is the correct result."  There is no legal basis for such a didactic approach to remand; and as we have already explained such a rule would be an anomaly within jurisprudence that has always been grounded on principles of equity and fairness.  Pragmatically speaking, the test she proposes would likely prove to be illusory in application.  If the "foreclosing lender would have prevailed at trial" in spite of an erroneous evidentiary ruling, then the error would almost certainly have been harmless—and an appellate court would not reverse such a ruling.  See Special v. W. Boca Med. Ctr., 160 So. 3d 1251, 1256 (Fla. 2014) (holding that in civil appeals, an error is harmless if "there is no reasonable possibility that the error contributed to the verdict"); cf. Herbello v. Perez, 754 So. 2d 840, 840 (Fla. 3d DCA 2000) ("After carefully reviewing the record, we find that the alleged erroneous evidentiary ruling did not affect the outcome of the trial.  Therefore, the error, if any, was harmless.").

-19-

circumstances, upon remand, Nationwide should not be given a second bite at the apple to present evidence which it failed to produce at the scheduled evidentiary hearing. 'Somewhere the curtain must ring down on litigation.' " (citation omitted) (quoting Broward County v. Coe, 376 So. 2d 1222, 1223 (Fla. 4th DCA 1979))); Baywood Furniture Mart, Inc. v. Kennedy, 295 So. 2d 350, 353 (Fla. 2d DCA 1974) ("It has long been held that where 'there is such an insufficiency of evidence as to leave a material point in controversy uncertain and such a point is covered by the pleadings and it affirmatively appears that additional evidence is available *and justice seems to require* a more complete development of the right of the parties under the law, the cause may be remanded with directions to take further evidence on such point.' " (emphasis added) (quoting Wilkins v. Bank of Commerce, 116 So. 13, 14 (Fla. 1928)); Fleischer v. Virginia-Carolina Chem. Co., 89 So. 401 (Fla. 1921); Atl. & Gulf Props., Inc. v. Palmer, 109 So. 2d 768, 771 (Fla. 3d DCA 1959))); Pain Care First of Orlando, LLC v. Edwards, 84 So. 3d 351, 355 (Fla. 5th DCA 2012) ("[A] new trial is not warranted.  Having proceeded to judgment on legally insufficient proof, Appellee does not get a do-over."); Morton's, 48 So. 3d at 79-80; see also Spencer, 242 So. 3d at 1192 (Salario, J., concurring) (observing that "our court routinely follows the general rule that a party that fails to meet its burden of proof in the trial court does not, when we reverse a judgment in its favor, get a second bite at the apple by way of a new trial or hearing on remand" and citing examples); Cleveland v. Crown Fin., LLC, 212 So. 3d 1065, 1069 (Fla. 1st DCA 2017) (recognizing that "courts generally do not provide parties with an opportunity to retry their case upon a failure of proof" and citing examples).  The general prohibition in such cases against "second bites at the apple" is a sound one that is subject only to

the exception of extraordinary circumstances.  What may constitute an extraordinary circumstance is of course a matter subject to differing views (as, indeed, the issuance of a dissent in this case illustrates), but the strong aversion against "extra inning[s]" of litigation, Morton's, 48 So. 3d at 80, remains firmly in place.  We are confident that the litigants and their advocates who appear before us will be capable of articulating the equitable circumstances that may either buttress or overcome that aversion.

Second, our view on this matter aligns with those of appellate and supreme courts throughout the country, which have identified equity and fairness as underlying principles when fashioning a scope of remand.  The courts of our sister states frequently tether remand directions with the courts' view of fairness and equity. See, e.g., Gerrity Oil & Gas Corp. v. Magness, 946 P.2d 913, 934 (Colo. 1997) (en banc) ("Whenever the question arises as to whether a complete retrial is necessary, '[t]he determinative considerations are those factors relating to fairness.' " (quoting Marks v. Dist. Court, 643 P.2d 741, 744 (Colo. 1982))); George Ward Builders, Inc. v. City of Lee's Summit, 157 S.W.3d 644, 651 (Mo. Ct. App. 2004) ("Although rare, Missouri appellate courts have given plaintiffs, who have misconceived the law, the opportunity to amend their pleadings when equity and fairness requires it, even in cases where a verdict was reached by a judge or jury."); Cola v. Packer, 383 A.2d 460, 462-63 (N.J. Super. Ct. App. Div. 1977) ("We conclude that, in all fairness, [A]ppellant . . . should be afforded an opportunity to present a defense to the charge that he violated N.J.S.A. 49:3-71 and was subject to civil liability thereunder.  The case is, therefore, remanded to the trial court for that specific and limited purpose."); Nourse v. Austin, 436 A.2d 738, 739 (Vt. 1981) ("Since it appears that the verdict itself was the

-21-

result of compromise, however, justice and fairness require that the cause be remanded for a new trial on all issues, including liability."); UNC Teton Exploration Drilling, Inc. v. Peyton, 774 P.2d 584, 596 n.8 (Wyo. 1989) ("A second chance upon remand for proof according to the appellee lacks something in litigative fairness to the opposing contestant.  In this case, we will remand since a broad and comprehensive rule is now enunciated." (emphasis omitted)).  While in the federal courts Congress has codified discretionary remand within a statute.  See 28 U.S.C. § 2106 (2012) ("The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances."); United States v. Yagid, 528 F.2d 962, 965 (2d Cir. 1976) ("When we believe that there is an inherent problem in a particular remand, we have the power, indeed the duty, to frame our opinion to provide for 'further proceedings . . . (which are) just under the circumstances.' " (alterations in original) (quoting 28 U.S.C. § 2106)); see also Russman v. Bd. of Educ. of Enlarged City Sch. Dist. of City of Watervliet, 260 F.3d 114, 121 (2d Cir. 2001) (addressing remand directions when a case is determined to have been moot; "Whether we vacate the district court's judgment or simply dismiss the appeal, leaving the district court's judgment intact, depends on the equities of the case").

Our conception of the principles that apply to remand directions in civil appeals is not a new one at all.  Today we are simply recognizing what appellate courts have always done when issuing directions on remand.  We are confident that the basic

-22-

principles of natural fairness and equity, handed down for centuries in our common law and subject to the strong preference for finality in trials, can continue to withstand the analytical rigors of fashioning an appropriate scope of remand for civil appeals in our district. And we are hopeful that litigants will be able to more cogently frame their arguments in civil appeals for a particular remand by knowing what drives the decisions we make on this important issue. We will now apply those principles to the case at bar.

C.

Under the facts of this case, we believe Ms. Tracey is entitled to the relief she requests in her motion for rehearing. The last minute insertion of the modification agreement as an issue at trial—when it had been dropped as an issue in the operative complaint—is a puzzle that has remained unsolved throughout this appeal. Wells Fargo has never explained why its original complaint attached a modification agreement as an exhibit, while its amended, operative complaint made no mention of it. Nor has it bothered to offer an excuse for why it waited until trial to resurrect this agreement as an issue in the controversy. In its response to Ms. Tracey's motion for rehearing, Wells Fargo only tells us it made an "inadvertent" pleading error when it filed its amended complaint but gives no justification for why it should now enjoy a chance at a second trial to correct that error of its own making. Indeed, Wells Fargo's response does not even claim it would be prejudiced by an involuntary dismissal; it instead tries to turn the table around, suggesting it would be "entirely appropriate to remand for continued proceedings so Wells Fargo may, if the court deems it appropriate, amend to cure any prejudice" to Ms. Tracey. The prejudice to Ms. Tracey is having to relitigate her defense in piecemeal, seriatim trials while her adversary vacillates around what the alleged basis

-23-

of its claims will ultimately be. Given the facts and equities here, we must agree with Ms. Tracey that remanding her case with directions to involuntarily dismiss the amended complaint is appropriate under these circumstances. Cf. Buday, 754 So. 2d at 773; Dean, 485 So. 2d at 440; Robbins, 692 So. 2d at 950.

III.

A.

We conclude by addressing some of the thoughtful concerns our dissenting colleague has expressed. Our colleague agrees "with the general proposition that courts should endeavor to do equity between the parties on remand," but not to the extent that this proposition would "ignore established precedent," a term which is used to refer to two lines of cases: (1) a selection of opinions in which the appellate courts have remanded for further proceedings following an erroneous pleading amendment at trial and (2) a selection from the recent spate of Florida residential foreclosure appellate opinions which, in reversing in favor of the defendants, have indicated a distinction between cases in which some evidence was presented at the prior trial versus those in which no evidence was presented (the former are typically remanded for a new trial to allow the plaintiff to again present its claims; the latter are not). See generally Evans v. HSBC Bank, USA, Nat'l Ass'n, 223 So. 3d 1059, 1063-64 (Fla. 2d DCA 2017). These decisions, and the seeming unfairness to Wells Fargo, lead our colleague to conclude that Wells Fargo ought to be given another chance in another trial to prove the case it should have pled and proven the first time around. [8]

---

[8]The dissent also posits that the recent "distinction" in remand directions among the district courts is ultimately based on Florida Rule of Civil Procedure 1.420(a)'s evidentiary standard for motions for involuntary dismissal in nonjury trials.

As to the first line of authorities, we would simply reiterate what we stated earlier. Sometimes appellate panels will remand for a new trial when a pleading has been improperly amended or an issue improperly tried without consent during a prior proceeding. Other times they will not. See Buday, 754 So. 2d at 773; Vetter, 511 So. 2d at 1115; Dean, 485 So. 2d at 440; Robbins, 692 So. 2d at 950. This precedent, when read collectively and in synthesis with the case law that explicitly addresses the rationale of remand, illustrates that it is discretion, premised on equitable considerations, which shapes the scope of remand following an appeal on this issue.[9]

---

That is a novel notion (one wonders how to apply it to the analogous motion for directed verdict in jury trials, rule 1.480, a rule that contains no evidentiary standard whatsoever in its text). It is also a notion that reflects a fundamental obfuscation between what an appellate court does when it considers the merits of an appeal and the scope of remand the court issues following a successful appeal. The two inquiries may be related, but they are not fungible. When an adjudication is made under a particular procedural rule, that rule can, and often will, shape and illuminate how the appellate court will review the substantive issues on the merits of the appeal. Similarly, the invocation of a procedural rule may be necessary to preserve certain appellate arguments and relief. That is all the cases cited by the dissent on this point actually hold. But the rules of civil procedure do not speak to the scope of appellate remand at all (unlike section 59.35 and the authorities discussing the scope of remand in section II.B., supra, which do). The scope of remand after the merits of an appeal have been decided is necessarily a separate inquiry, and in those cases where it has been addressed, is always treated as such. In any event, if it were true, as the dissent now espouses, that an appellate court's remand in these cases turned completely on the standard trial courts are supposed to apply under rule 1.420(b), then surely one of the cases cited in the dissenting opinion would have stated that sweeping proposition. None of them did. That is because the analysis here turns on principles of equity and well-established case law (case law the dissent ignores), not the text of a procedural rule that does not address the scope of remand. Cf. Winchel v. PennyMac Corp., 222 So. 3d 639, 645-46, 646 & n.5 (Fla. 2d DCA 2017) (observing that "[w]e do not ordinarily give a party who has failed to prove its case at trial a do-over by remanding for retrial" and remanding for entry of a judgment in favor of the defendant, notwithstanding the defendant's failure to move for involuntary dismissal).

[9]There is no categorical rule, as the dissent seems to suggest, that whenever a party relies in good faith upon an erroneous trial court ruling, it is entitled to retry its case under the corrected ruling. Indeed, that would be quite a leap in the law.

From our review of this record, we remain convinced that our decision not to remand this case for another trial is an appropriate exercise of our discretion.

As to the second line of cases, while there may be some allure to treating the "some-evidence-no-evidence" distinction that has emanated from Sas v. Federal National Mortgage Ass'n, 112 So. 3d 778 (Fla. 2d DCA 2013)—and that has been subsequently repeated, recited, and clarified in various district courts of appeal decisions—as if it were a binding, unwavering rule on remand going forward in similar

---

Accord § 59.35; see also Morgan Stanley & Co. v. Coleman (Parent) Holdings Inc., 955 So. 2d 1124, 1131 (Fla. 4th DCA 2007) (reversing a $1.58 billion judgment where the plaintiff's testifying expert failed to proffer an appropriate measure of actual, "fraud-free" value of securities but refusing to remand for a new trial: "We reject CPH's argument that it should, at the least, be given a new trial to prove damages because the trial court erred in its pretrial rulings and jury instructions concerning the proper measure of damages"); Anesthesiology Critical Care & Pain Mgmt. Consultants, P.A. v. Kretzer, 802 So. 2d 346, 351 (Fla. 4th DCA 2001) (holding that although plaintiffs relied on an erroneous trial court ruling that it was entitled to a presumption that defendant acted negligently, on remand plaintiffs would not be given a "second opportunity to prove their case"). The cases the dissent cites in support of this far-reaching pronouncement, when read closely, do not state the rule our colleague appears to have gleaned. See Moody v. Dorsett, 149 So. 3d 1182, 1183-84 (Fla. 2d DCA 2014) (recounting a misunderstanding between trial counsel and the trial court concerning presentation of setoff evidence, coupled with an erroneous "circuit practice," which led to an attorney's detrimental reliance on a ruling that the trial court altered postverdict and holding that "*[b]ased on the facts of this case*, we conclude that Ms. Moody reasonably relied on the trial court's erroneous midtrial ruling and cannot be penalized for doing so" (emphasis added)); John Hancock Mut. Life Ins. Co. v. Zalay, 522 So. 2d 944, 945, 946 (Fla. 2d DCA 1988) (remanding for new trial where a trial court directed a verdict in favor of a defendant on an issue of liability, and after the defense had "substantially presented" its case, reversed its ruling but refused to allow the defense to reopen its case to present further testimony in light of the court's altered ruling). It was hardly surprising that we would remand for a new trial in Moody and Zalay when the erroneous ruling we identified in each of those cases was one that had *precluded* the presentation of evidence by the appellants in their first trial.

It is curious for the dissent to acknowledge that appellate courts should "endeavor to do equity" in fashioning remand, while discovering so many new, unbreakable legal rules on the scope of remand that leave no room to ever actually do equity.

cases, it is no such thing. It cannot be. First, to so hold would be to elevate a common law didacticism above a legislative pronouncement of discretion. See § 59.35 ("An appellate court *may*, in reversing a judgment of a lower court brought before it for review by appeal, by the order of reversal, if the error for which reversal is sought is such as to require a new trial, direct that a new trial be had on all the issues shown by the record or upon a part of such issues only." (emphasis added)); Metro. Cas. Ins. Co. v. Tepper, 2 So. 3d 209, 213 (Fla. 2009) ("This Court does not question the wisdom of a statute but instead applies the statute according to the Legislature's direction."); cf. Barrow v. State, 27 So. 3d 211, 218 (Fla. 4th DCA 2010) (criticizing trial judge's reliance on "an inflexible rule for a decision that the law places in the judge's discretion"). Second, it would conflict with decades of Florida law that ties the scope of remand in civil appeals concerning evidentiary disputes to the equitable circumstances of a particular case. Finally, we must observe that none of the recent foreclosure opinions our colleague recites for this proposition included a ratio decidendi for the "some-evidence-no-evidence" rule from which those courts fashioned their respective remand instructions.[10] Such omissions were surely not unintentional. The lone exception in this regard appears to be the case of Wolkoff v. American Home Mortgage Servicing, Inc., 153 So. 3d 280 (Fla. 2d DCA 2014). And the guiding principle the court in Wolkoff (quite astutely) uncovered in reviewing the precedents on this distinction turned out to be none other than—equity. Id. at 283 (distinguishing Sas, 112 So. 3d 778, and Kelsey v.

---

[10]As the North Carolina Supreme Court once remarked, " '[e]x nihilo nihil fit' is a maxim that admits no exceptions." Virginia-Carolina Chem. Co. v. Turner, 130 S.E. 154, 154 (N.C. 1925).

SunTrust Mortgage, Inc., 131 So. 3d 825 (Fla. 3d DCA 2014), as cases that turned on the admissibility of the evidence and where "the equities were balanced in favor of remand"). Thus, as we implied in Wolkoff, we must read these recent foreclosure opinions as cases in which the panels viewed the fairness and equity of the specific evidentiary records before them as necessitating either further proceedings (as in the case of Sas, 112 So. 3d 778) or an involuntary dismissal (as in the case of Wolkoff, 153 So. 3d at 283).[11] To be sure, whether that record was utterly devoid of, or otherwise rife with, competent evidence might play an important equitable consideration for purposes of remand in this class of appeals—but it remains just that: an equitable consideration.

B.

Today we reconcile our recent jurisprudence in residential mortgage foreclosure appeals with long-standing, settled law on the scope of remand in civil appeals. We hold that when fashioning remand for a civil appeal where the party with the burden of proof fails to sufficiently plead the claim it presents at trial or to establish a basis in admissible evidence for a claim at trial, an appellate panel may exercise some level of equitable discretion to consider the circumstances of the particular case. This discretion is bounded both by the substantive relief sought within the appeal and the strong preference for finality of trial proceedings. The prohibition against proverbial

---

[11]We would also note that it remains unexplained why, under this purported distinction, in those cases where "some evidence" had been presented before the trial court, the appellate panels remand the case for a new trial. One would intuit that, to the extent the presentation of "some" admissible evidence were a pertinent demarcation for all remands in appeals over the sufficiency or admissibility of evidence, the more appropriate remand in most cases would be to direct the trial court to simply enter an amended judgment based upon the record evidence that was otherwise properly admitted.

multiple "bites at the apple" for trials remains firmly rooted as the leading, guiding principle to govern the scope of remand and should serve as the default direction when these kinds of decisions are being made. We agree with how the Morton's court put it: only "exceptional legal or factual" circumstances will justify a deviation from this general prohibition. 48 So. 3d at 80.

Having so held, we recognize the important points our dissenting colleague has raised, as well as the cases he discusses in which certain courts have begun fashioning varying remand directions without reference to the analysis we have discerned. It may be that a "clear line of case law" now mandates a particular remand, without discretion, on the part of appellate panels whenever a certain kind of error has been identified that warrants reversal in a civil appeal. Certainly, the issue is one that has become a central feature in many residential mortgage foreclosure appeals. Accordingly, pursuant to Florida Rule of Appellate Procedure 9.030(a)(2)(A)(v), we certify the following question of great public importance to the Florida Supreme Court:

> WHEN A PARTY WITH THE BURDEN OF PROOF IN A CIVIL CASE FAILS TO PLEAD THE CLAIM PRESENTED AT TRIAL OR TO ESTABLISH A BASIS IN ADMISSIBLE EVIDENCE FOR A CLAIM AT TRIAL, DOES A DISTRICT COURT OF APPEAL HAVE EQUITABLE DISCRETION TO FASHION THE SCOPE OF REMAND AFTER A REVERSAL ON APPEAL, AND, IF SO, WHAT GOVERNS OR CONSTRAINS THE EXERCISE OF THAT DISCRETION?

We would answer the question in the affirmative, consistent with the principles we have identified above.

Accordingly, we reverse the judgment below and remand with directions for the circuit court to enter an involuntary dismissal in favor of Ms. Tracey.

Reversed and remanded with instructions; question certified.

KHOUZAM, J., Concurs.
SLEET, J., Concurs in part and dissents in part with opinion.

SLEET, Judge, Concurring in part and dissenting in part.

I concur fully in part I of the majority opinion. However, because the scope of remand in this panel's original opinion was appropriate, I dissent from the majority's decision in parts II and III to grant rehearing and to remand for an involuntary dismissal. The analysis in this case should have been limited to whether the trial court abused its discretion in allowing Wells Fargo to amend the complaint during trial and whether this amendment prejudiced Tracey in the preparation of her defense. Instead, the majority has ventured beyond the specific facts of this case and created a new, sweeping standard for the scope of remand which it mandates will now apply to all civil appeals in the Second District. As I will explain below, this new standard conflicts with the rules of procedure and well-established precedent from this and every other Florida District Court of Appeal. And the majority's decision effectively recedes from Sas v. Federal National Mortgage Ass'n, 112 So. 3d 778 (Fla. 2d DCA 2013); Wolkoff v. American Home Mortgage Servicing, Inc., 153 So. 3d 280 (Fla. 2d DCA 2014); Evans v. HSBC Bank, USA, National Ass'n, 223 So. 3d 1059 (Fla. 2d DCA 2017); and the full line of cases that follow these decisions without consideration by the full court en banc.

Florida courts have consistently adhered to a clear standard in determining the scope of remand in foreclosure cases. In Evans, this court expressly addressed and applied the distinction now abandoned by the majority:

> Significantly, however, courts have drawn a distinction between cases in which the plaintiff submitted some evidence of damages and cases where there has been a complete failure of proof on the issue. See Beauchamp v. Bank of N.Y., 150 So. 3d 827 (Fla. 4th DCA 2014); Lasala v. Nationstar Mortg., LLC, 197 So. 3d 1228 (Fla. 4th DCA 2016). For instance, in Sas v. Federal National Mortgage Ass'n, 112 So. 3d 778, 779 (Fla. 2d DCA 2013), the bank

-31-

offered witness testimony as to the amount of indebtedness, but offered no business records to support the testimony. Similar to Ms. Evans' case, the witness "had no personal knowledge of the amount of the debt . . . and testified about the amount based only on his review of [the servicer]'s business records related to the loan." Id. The Sas court affirmed the final judgment, but reversed and remanded for the trial court to determine the amount of damages with nonhearsay evidence. Id. at 780; see also Peuguero v. Bank of Am., N.A., 169 So. 3d 1198, 1204 (Fla. 4th DCA 2015) (affirming final judgment of foreclosure but reversing and remanding for determination of the amounts owed where "the Bank established the amount of indebtedness through witness testimony, even though that testimony concededly was inadmissible hearsay" (quoting Beauchamp, 150 So. 3d at 829 n.2)).

In contrast, the plaintiff in Wolkoff sought to prove damages by eliciting testimony from a witness based solely upon the proposed final judgment. We rejected the attempt to introduce the contents of the proposed final judgment as substantive evidence. Wolkoff, 153 So. 3d at 281–82 ("A document that was identified but never admitted into evidence as an exhibit is not competent evidence to support a judgment."). The Wolkoff court reasoned that "[u]nlike the lender[ ] in [Sas] . . . [plaintiff] failed to submit into evidence either the amount of indebtedness or the business records on which the amount was based." Id. at 282.

223 So. 3d at 1063–64 (alterations in original). And every other Florida District Court

has applied this same distinction when determining whether the error identified on

appeal is one that warrants remand for an involuntary dismissal or for a new trial. See,

e.g., Levy v. Ben-Shmuel, 255 So. 3d 493, 494 (Fla. 3d DCA 2018) (explaining that a

party is not entitled to a new trial when it has failed to meet its burden to establish an

element of the case "unless that party's failure to meet its burden was the result of

judicial error"); E & Y Assets, LLC v. Sahadeo, 180 So. 3d 1162, 1162 (Fla. 4th DCA

2015) ("Where a foreclosure plaintiff fails to prove the amount due at trial the proper

remedy is dismissal. . . . [W]here the trial court erroneously admitted evidence of the

amount owed on a note . . . it is appropriate to remand for further proceedings to determine the amount of the debt owed."); McMillan v. Bank of N.Y. Mellon, 180 So. 3d 1090, 1092 (Fla. 4th DCA 2015) (remanding for further proceedings when "[l]ike the plaintiff in Sas, [here] the Bank established the amount of indebtedness through witness testimony, even though that testimony concededly was inadmissible hearsay" and distinguishing "Wolkoff, where the plaintiff failed to produce any evidence, admissible or not, supporting the amount of indebtedness" (second alteration in original) (quoting Peuguero v. Bank of Am., N.A., 169 So. 3d 1198, 1204 (Fla. 4th DCA 2015))); Webster v. Chase Home Fin., LLC, 155 So. 3d 1219, 1220 (Fla. 5th DCA 2015) (applying Sas and concluding that remanding for further proceedings was appropriate when the trial court had erroneously admitted inadmissible hearsay); Fitchner v. Lifesouth Cmty. Blood Ctrs., Inc., 88 So. 3d 269, 277 n.1 (Fla. 1st DCA 2012) (explaining that remand for amendment of the pleadings is appropriate when sufficiency of the evidence had not been decided by the trial court).

This distinction, which the majority casually refers to as "some-evidence-no-evidence," did not originate from a "recent spate of Florida residential foreclosure appellate opinions"; it is based on Florida Rule of Civil Procedure 1.420(b). Rule 1.420(b) provides for an involuntary dismissal only when "on the facts and the law the party seeking affirmative relief has shown no right to relief." This court has consistently abided by the Florida Rules of Civil Procedure in determining the scope of remand available on appeal. See, e.g., Colson, 183 So. 3d at 1041 ("It is only by virtue of a motion to dismiss or motion for directed verdict that this court could direct dismissal on remand."); May v. PHH Mortg. Corp., 150 So. 3d 247, 248 (Fla. 2d DCA 2014) ("When

-33-

confronted with a motion for involuntary dismissal, the trial court must determine whether or not the plaintiff has made a prima facie case.").  "Where the plaintiff has presented a prima facie case and different conclusions or inferences can be drawn from the evidence, the trial judge should not grant a motion for involuntary dismissal." Deutsche Bank Nat'l Tr. Co. v. Kummer, 195 So. 3d 1173, 1175 (Fla. 2d DCA 2016) (quoting Day v. Amini, 550 So. 2d 169, 171 (Fla. 2d DCA 1989)).[12]

Accordingly, it is a failure of proof, not merely an erroneous ruling from the trial court, that warrants the involuntary dismissal of the plaintiff's case on remand as opposed to a new trial.  Cleveland v. Crown Fin., LLC, 212 So. 3d 1065, 1069 (Fla. 1st DCA 2017) ("[C]ourts generally do not provide parties with an opportunity to retry their case upon a failure of proof." (citing Correa v. U.S. Bank N.A., 118 So. 3d 952, 956 (Fla. 2d DCA 2013))).  And this court has consistently remanded for an involuntary dismissal after determining that the plaintiff failed to prove a prima facie case.  See, e.g., Spencer v. Ditech Fin., LLC, 242 So. 3d 1189, 1191 (Fla. 2d DCA 2018) (concluding that the custodian's "testimony was insufficient to establish that the default letter was mailed" and remanding for involuntary dismissal, expressly distinguishing itself from cases regarding the admissibility of evidence and stating that this case dealt with "the sufficiency of evidence demonstrating an entity's routine business practices to establish that a default letter was mailed"); Asset Mgmt. Holdings, LLC v. Assets Recovery Ctr. Invs., LLC, 238 So. 3d 908, 909 (Fla. 2d DCA 2018) (involuntary dismissal was warranted where plaintiff failed to prove lost profits); Johnson v. U.S. Bank Nat'l Ass'n,

---

[12]I note that there is an important exception to the general rule that dismissal is required on remand after a party has failed to prove its case when that failure is due to judicial error.  See, e.g., Levy, 255 So. 3d at 497 n.4.

-34-

222 So. 3d 635, 637 (Fla. 2d DCA 2017) (holding that involuntary dismissal was appropriate where "none of the evidence presented by the Bank showed that the Bank was the holder of the note at any relevant point"); Edmonds v. U.S. Bank Nat'l Ass'n, 215 So. 3d 628, 631 (Fla. 2d DCA 2017) (concluding that involuntary dismissal was appropriate where plaintiff failed to offer any evidence that it complied with a condition precedent); Allen v. Wilmington Tr., N.A., 216 So. 3d 685, 688 (Fla. 2d DCA 2017) (remanding for involuntary dismissal when the "[t]rust did not meet its burden of proving it satisfied the condition precedent of giving notice of acceleration"); Wolkoff, 153 So. 3d at 283 (setting forth the general proposition that "[w]hen a party seeking monetary damages fails to establish an evidentiary basis for the damages ultimately awarded at trial, reversal for entry of an order of dismissal is warranted"); Turna v. Advanced Med-Services, Inc., 842 So. 2d 1075, 1076 (Fla. 2d DCA 2003) (reversing and remanding for judgment in favor of the defendant when "there was no evidence presented at trial" that could support the posttrial amendment of the complaint to add a new claim for damages); see also Walsh v. Bank of N.Y. Mellon Tr., 219 So. 3d 929, 930 (Fla. 5th DCA 2017) (reversing for involuntary dismissal when there was no evidence to support a finding that the bank had standing at the time the complaint was filed); Diroberto v. Bayview Loan Servs. LLC, 199 So. 3d 526, 526 (Fla. 4th DCA 2016) (concluding that involuntary dismissal was appropriate where "[t]here was no proof at trial that the original plaintiff . . . had standing to foreclose"); Rattigan v. Cent. Mortg. Co., 199 So. 3d 966, 967 (Fla. 4th DCA 2016) (reversing for involuntary dismissal when "there is no proper evidence in the record which could support the final judgment"); Alfonso v. JPMorgan Chase Bank, N.A., 182 So. 3d 930, 932 (Fla. 4th DCA 2016) (same); Walters

-35-

v. Nationstar Mortg., LLC, 180 So. 3d 236 (Fla. 5th DCA 2015) (reversing for involuntary dismissal when the bank failed to prove the standing of its predecessor in interest).

Involuntary dismissal is therefore not warranted in this case under rule 1.420(b) where Wells Fargo submitted sufficient evidence to support its prima facie case for foreclosure.  See, e.g., Kummer, 195 So. 3d at 1175.

I also disagree with the majority's conclusion that the equities of this particular case warrant involuntary dismissal of Wells Fargo's complaint.  The trial court erred below when it allowed Wells Fargo to amend its complaint during trial to conform to the evidence and include the two loan modifications that were pleaded in its initial complaint but not in the amended complaint on which it proceeded to trial.  The prejudice to Tracey was that she was unable to adequately prepare a defense to these loan modifications, having no notice that they would be admitted at trial or that Wells Fargo would proceed on a theory that she had breached the modification agreements when she stopped making payments on her mortgage in November 2010.[13]  Remanding for amendment of the pleadings and retrial will cure this prejudice, giving Tracey sufficient notice and opportunity to prepare and present a defense to the loan modification agreements if she can do so in good faith.

However, remanding for an involuntary dismissal in this case unfairly penalizes Wells Fargo for relying on the trial court's ruling and grants a windfall to Ms. Tracey.  This court has long held that "[a] party cannot be penalized for good faith

_____

[13]Tracey first raised the issue of the missing loan modification agreements at trial when she objected to Wells Fargo's admission of the original note and mortgage as incomplete without the modifications attached.  As the majority indicates, Tracey did not raise the missing modifications as an affirmative defense or otherwise raise this issue prior to trial.

reliance on a trial court's ruling" and that "[w]here a ruling is subsequently found to be erroneous, litigants must be granted an opportunity to present their case under the corrected ruling."  John Hancock Mut. Life Ins. Co. v. Zalay, 522 So. 2d 944, 946 (Fla. 2d DCA 1988); see also Moody v. Dorsett, 149 So. 3d 1182, 1184 (Fla. 2d DCA 2014) (reversing for new trial because "Ms. Moody reasonably relied on the trial court's erroneous midtrial ruling and cannot be penalized for doing so").  Reversing and remanding for a new trial "in such circumstances . . . allow[s] the aggrieved party to present additional evidence, and the failure to do so may constitute an abuse of discretion."  Gulf Eagle, LLC v. Park E. Dev., LTD., 196 So. 3d 476, 479 (Fla. 2d DCA 2016).  That is because "[a] party who relies on a favorable trial court ruling should not be placed at risk of being worse off than had the ruling been unfavorable in the first instance."  Moody, 149 So. 3d at 1184 (quoting John Hancock Mut., 522 So. 2d at 946); cf. Holy Cross Hosp., Inc. v. Marrone, 816 So. 2d 1113, 1122 (Fla. 4th DCA 2001) (Polen, C.J., concurring) ("It seems unduly harsh not only to snatch victory from a party due to a procedural error of the trial court . . . but also to maintain that party shall have no opportunity to proceed as if the trial court had made the correct ruling.  Allowing appellee to attempt to establish her cause of action at a new trial . . . would not constitute a proverbial 'second bite of the apple' . . . [where] appellee's 'first bite' was ineffectual, as the trial court never afforded her the opportunity to prove her case through all alternative admissible means at her disposal."); Futch v. Fla. Dep't of Highway Safety & Motor Vehicles, 189 So. 3d 131, 134 (Fla. 2016) (Canady, J., dissenting) ("When an error made in a ruling on an evidentiary question is identified in a review proceeding, the result is not an automatic victory for the party aggrieved by the

error.  It is an 'elementary' principle of the appellate process that 'where findings are infirm because of an erroneous view of the law, a remand is the proper course unless the record permits only one resolution of the factual issue.' " (quoting Pullman–Standard v. Swint, 456 U.S. 273, 292 (1982))).  In this case, we cannot determine what action Wells Fargo might have taken had the trial court properly denied its motion to amend its complaint at the outset of trial.  Our disposition on appeal should not place Wells Fargo in a worse situation than it would have been in had the trial court not erred below.

Moreover, "[t]he law favors the trial of cases on their merits."  Ohio Cas. Ins. Co. v. MRK Const., Inc., 602 So. 2d 976, 978 (Fla. 2d DCA 1992).  And Florida courts have consistently remanded for a new trial when reversing a final judgment based on errors similar to the one that occurred in this case.  See, e.g., Palm v. Taylor, 929 So. 2d 566, 568 (Fla. 2d DCA 2006) (remanding for a new trial when plaintiff was permitted to amend the complaint at the end of trial, prejudicing the defense); Ohio Cas., 602 So. 2d at 978 (observing that permitting amendment of the complaint during trial completely eliminated a defense to the charges and reversing and remanding for a new trial and amendment of the pleadings); Rankin v. Rankin, 258 So. 2d 489, 492 (Fla. 2d DCA 1972) (remanding "with directions to the chancellor to entertain additional pleadings in the same cause that will satisfy . . . due process" when the plaintiff sought and was awarded relief not properly pleaded in the complaint); Tucker v. Daugherty, 122 So. 2d 230, 232 (Fla. 2d DCA 1960) (remanding for new trial when the plaintiff was permitted to amend its negligence complaint to add a new theory of negligence after resting its case); Fed. Home Loan Mortg. Corp. v. Beekman, 174 So. 3d 472, 477 (Fla. 4th DCA 2015) (reversing and remanding for new trial and amendment of the pleadings

when "[t]he trial court erred by granting relief that was outside the scope of the pleadings and was not tried by consent"); Guerrero v. Chase Home Fin., LLC, 83 So. 3d 970, 974 (Fla. 3d DCA 2012) (reversing a final judgment of foreclosure and remanding for amendment of the pleadings to allow the addition of a lost note count); Carnival Cruise Lines, Inc. v. Nunez, 646 So. 2d 831, 834 (Fla. 3d DCA 1994) (reversing and remanding "for a new trial on the amended complaint" when the plaintiff was permitted to amend its complaint to add a claim for aggravation of a preexisting condition); Lasar Mfg. Co. v. Bachanov, 436 So. 2d 236, 238 (Fla. 3d DCA 1983) (remanding for new trial and amendment of the complaint when the plaintiffs were permitted "to amend their complaint to add a claim for punitive damages halfway through the trial"); Brumlik v. Palmer, 407 So. 2d 1058, 1059 (Fla. 5th DCA 1981) ("Because neither the pleadings, amendments[,] nor proof support the relief granted, we reverse and remand for repleading and retrial.").

Florida courts have unfailingly remanded for a new trial even when the erroneously admitted evidence was the only evidence of an element of the plaintiff's cause of action. See, e.g., Rowland v. Whitehead, 375 So. 2d 607, 609 (Fla. 2d DCA 1979) (distinguishing between the scope of remand upon reversal of "a judgment for a plaintiff solely for lack of evidence" and reversal based on an evidentiary error and remanding for amendment of the pleadings and retrial even when after striking erroneously admitted evidence "there was no evidence left to support a judgment for the plaintiff"); Deutsche Bank Nat'l Tr. Co. v. Baker, 199 So. 3d 967, 968 (Fla. 4th DCA 2016) ("Where a foreclosure plaintiff presents evidence of the amount of damages under the loan, there is sufficient prima facie evidence of damages to preclude an

involuntary dismissal, even if the evidence of damages was based on inadmissible hearsay that was erroneously admitted at trial."); Webster, 155 So. 3d at 1220 (remanding for further proceedings when the only evidence of notice was inadmissible hearsay); Mazine v. M & I Bank, 67 So. 3d 1129, 1132 (Fla. 1st DCA 2011) (reversing and remanding for further proceedings after determining that the only evidence of the amount of default was improperly admitted).

None of the cases cited by the majority support remanding for an involuntary dismissal of the entire complaint because the trial court abused its discretion in allowing the plaintiff to amend its complaint during trial. Superficially, the cases cited by the majority may appear to reach divergent results; however, an analysis of their holdings shows that they are consistent. In Dean Co. v. U.S. Home Corp., 485 So. 2d 438, 440 (Fla. 2d DCA 1986), this court remanded for the entry of judgment in favor of the defendant when the plaintiff agreed to an "all or nothing" theory of indemnification but was permitted at the close of the case to amend its complaint to plead a theory of contribution. In that case, the defendant pleaded and succeeded in proving that both parties were at fault only to find itself "trap[ped] . . . in a judgment requiring contribution." And in Freshwater v. Vetter, 511 So. 2d 1114, 1115 (Fla. 2d DCA 1987), the trial court erred in permitting the plaintiff to amend its complaint at the close of the evidence to include an entirely new cause of action against one of the defendants. In that case, this court merely vacated the judgment against that defendant, leaving the judgment against the remaining defendants intact. The majority has not identified any such inequities in the present case. The only prejudice to Ms. Tracey was that she was unable to prepare a defense based on the loan modification agreements.

-40-

Finally, although I agree with the general proposition that courts should endeavor to do equity between the parties on remand, I disagree with the majority's mischaracterization of the holdings in Sas and Wolkoff as limited to the "specific evidentiary records before [the panels in those cases]" or based solely on the application of equitable principles. The plain language of this court's holding in Wolkoff sets forth a rule generally applicable when a party fails to prove an essential element of its case. 153 So. 3d at 283 ("When a party seeking monetary damages fails to establish an evidentiary basis for the damages ultimately awarded at trial, reversal for entry of an order of dismissal is warranted."). Consistent with Sas and Wolkoff, an involuntary dismissal is not and should not be the default disposition of all civil appeals; rather, it is only warranted where the plaintiff failed "to offer any evidence at all—whether admissible or not." Evans, 223 So. 3d at 1064 (quoting Beauchamp, 150 So. 3d at 829 n.2); see also Colson, 183 So. 3d at 1040 ("While . . . the general rule [is] that 'when the record on appeal is devoid of competent substantial evidence to support the attorney's fee award, the appellate court will reverse the award without remand for additional evidentiary findings,' where the record includes some evidence supporting the fee and cost award, this court may remand for further proceedings." (quoting Diwakar v. Montecito Palm Beach Condo. Ass'n, 143 So. 3d 958, 961 (Fla. 4th DCA 2014))). Contrary to the majority's assertions, this court's adherence to procedural requirements and precedent in providing instructions on remand does not preclude it from considering the "equitable circumstances" of the parties. Indeed, as this court observed in Wolkoff and as the majority repeats above, equity supported remanding the case for a new trial in both Sas and Kelsey v. SunTrust Mortg., Inc., 131 So. 3d 825, 826 (Fla. 3d DCA

-41-

2014), because of the type of error identified on appeal, not because of the exceptional circumstances of the parties.

In this case, Wells Fargo submitted sufficient evidence to support the final judgment in its favor. The error was one of pleading and notice, not insufficient evidence. Because we cannot say on appeal that Wells Fargo would not have been able to prove its case but for the error below, I would remand for amendment of the pleadings if Wells Fargo can do so in good faith and retrial on the merits.

Instead, the majority holds that involuntary dismissal shall now be "the default direction" on remand in all civil appeals, limiting this court's ability to remand for a new trial to "exceptional . . . circumstances." The majority attempts to bind this court to a new legal standard that would limit our discretion and in doing so departs from established precedent from this and every other Florida District Court. Therefore, I believe that consideration of this case en banc is warranted and necessary to address an issue of exceptional importance and to maintain uniformity in the law as it relates to the scope of remand in this district. See Fla. R. App. P. 9.331(a); see also In re Rule 9.331, 416 So. 2d 1127, 1128 (Fla. 1982) ("[A] three-judge panel of a district court should not overrule or recede from a prior panel's ruling on an identical point of the law . . . ."); Wood v. Fraser, 677 So. 2d 15, 18 (Fla. 2d DCA 1996) ("[A]bsent an en banc opinion expressly receding from a point of law announced in previous opinions of this court, a trial court should not rely on the expressions of a three-judge panel as a basis to conclude that a previous opinion of another three-judge panel no longer carries the force of law."); Levy, 255 So. 3d at 494 n.1 ("[I]ntra-district conflict should be resolved by an en banc decision of the court pursuant to rule 9.331." (citing In re Rule 9.331, 416

So. 2d at 1128)); <u>Ortiz v. State</u>, 24 So. 3d 596, 618 (Fla. 5th DCA 2009) (Cohen, J., dissenting) (collecting cases and defining an issue of exceptional importance as when an opinion conflicts with a rule of law, when a case is important to the jurisprudence of the entire state, when a case has an issue that impacts a large portion of the community, or when the outcome of a case could negatively impact "the public's perception of the judiciary's ability to render meaningful justice" (quoting <u>Univ. of Miami v. Wilson</u>, 948 So. 2d 774, 791 (Fla. 3d DCA 2006))). Accordingly, I would also grant Tracey's motion for rehearing en banc.